## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| JUST4FIT, INC., | x : | |
| Plaintiff/Counterclaim Defendant, | : : : | Case No. 10-cv-905-LPS |
| vs. | : : | **VERIFIED ANSWER, DEFENSES** |
| AETREX WORLDWIDE, INC., | : : | **COUNTERCLAIMS AND** |
| | : | **THIRD-PARTY COMPLAINT** |
| Defendant/Counterclaim Plaintiff/ Third-Party Plaintiff. | : : : | |
| vs. | : : | |
| NOAM DANENBERG, JUST4FIT ISRAEL, LTD.; MAVIDEX LTD d/b/a BLUE BIRD SURF & URBAN; OFER MICHALOVSKI; JOHN and/or JANE DOES 1-25; and ABC, CORPORATIONS 1-25 | : : : : : : : | |
| Third-Party Defendants. | : | |
| | x | |

Aetrex Worldwide, Inc. ("Defendant" or "Aetrex") by and through its undersigned

counsel, as and for its Answer to Plaintiff Just4Fit, Inc.'s ("Just4Fit") Verified Complaint (the

"Complaint"), states as follows:

### AS TO THE ALLEGATIONS CONCERNING PARTIES

1.      Aetrex denies the allegations contained in Paragraph 1 of the Complaint, except

admits that this case in part concerns Aetrex's "iStep" device, which electronically measures and

analyzes certain data regarding a user's feet in relation to, among other things, shoe and orthotic

fit and recommendations (the "iStep").

2.      Aetrex denies the allegations contained in Paragraph 2 of the Complaint, and

further denies knowledge and information sufficient to form a belief as to the truth of the

allegations in Paragraph 2 concerning whether Noam Danenberg ("Danenberg") started Fitracks, Inc. ("Fitracks"), developed a "machine," or marketed said "machine" to "shoe stores among others."

3.      Aetrex denies knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, except admits that it is a corporation formed under the laws of the State of New Jersey and that its principal place of business is in Teaneck, New Jersey.  To the extent that the term "Product," as used in the Complaint, refers to the iStep device, Aetrex admits that it was a Fitracks customer with respect to such "Product."

4.      Aetrex denies the allegations contained in Paragraph 4 of the Complaint.  To the extent that the term "Product," as used in the Complaint, refers to the iStep device, Aetrex admits that it saw potential for the iStep device as a vehicle to promote and sell Aetrex's products.

5.      Aetrex denies the allegations contained in Paragraph 5 of the Complaint, except admits that it entered into negotiations with Danenberg to buy Fitracks and its assets and executed a Merger Agreement dated May 15, 2008 (the "Merger Agreement").  Aetrex further states that the Merger Agreement is a written document that exists, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning.

6.      Aetrex denies the allegations contained in Paragraph 6 of the Complaint, except admits that the Merger Agreement exists, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning.

7.      Aetrex denies the allegations contained in Paragraph 7 of the Complaint, except admits that the Merger Agreement exists, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning.

8.      Aetrex denies the allegations contained in Paragraph 8 of the Complaint, except admits that the Merger Agreement exists, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning.

9.      Aetrex denies the allegations contained in Paragraph 9 of the Complaint, except admits that the Merger Agreement and Virtual Store License Agreement (the "VS License Agreement" or "License Agreement") exist, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning.  Aetrex further admits that Just4Fit is a Delaware corporation and a signatory to the VS License Agreement.

10.     Aetrex denies the allegations contained in Paragraph 10 of the Complaint, except admits that the VS License Agreement exists, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning..

11.     Aetrex denies the allegations contained in Paragraph 11 of the Complaint, except admits that the VS License Agreement exists, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning.

12.     Aetrex avers that the allegations contained in Paragraph 12 of the Complaint constitute conclusions of law as to which no responsive pleading is required.  To the extent a response is deemed to be required, Aetrex denies the allegations contained in Paragraph 12, except admits that the License Agreement's definition of the term "Virtual Stores" is one issue presented in this lawsuit.

13.     Aetrex denies the allegations contained in Paragraph 13 of the Complaint, except admits that the VS License Agreement exists, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning.  Aetrex further admits that,

pursuant to the VS License Agreement, Aetrex was to be the exclusive supplier of certain products to the Virtual Stores contemplated by the VS License Agreement and that Just4Fit had certain other limited product sell rights.

14.     Aetrex denies the allegations contained in Paragraph 14 of the Complaint.

15.     Aetrex denies the allegations contained in Paragraph 15 of the Complaint.

16.     Aetrex denies the allegations contained in Paragraph 16 of the Complaint.

17.     Aetrex denies the allegations contained in Paragraph 17 of the Complaint.

18.     Aetrex denies the allegations contained in Paragraph 18 of the Complaint.

19.     Aetrex denies the allegations contained in Paragraph 19 of the Complaint.

## AS TO COUNT I OF THE COMPLAINT
(Declaratory Judgment)

20.     Aetrex repeats and reiterates each and every response set forth in Paragraphs 1 through 19 hereof, as if fully set forth herein.

21.     Aetrex denies the allegations contained in Paragraph 21 of the Complaint.

22.     Aetrex denies the allegations contained in Paragraph 22 of the Complaint.

23.     Aetrex denies the allegations contained in Paragraph 23 of the Complaint.

24.     Aetrex denies the allegations contained in Paragraph 24 of the Complaint.

25.     Aetrex denies the allegations contained in Paragraph 25 of the Complaint.

26.     Aetrex denies the allegations contained in Paragraph 26 of the Complaint.

27.     Aetrex denies the allegations contained in Paragraph 27 of the Complaint.

28.     Aetrex denies the allegations contained in Paragraph 28 of the Complaint, except admits that its position is that Plaintiff has failed to satisfy the exclusivity requirements contained in the VS License Agreement.

29.     Aetrex avers that the allegations contained in Paragraph 29 of the Complaint state conclusions of law as to which no responsive pleading is required.  To the extent a response is deemed required, Aetrex admits that a justiciable controversy exists with respect to, among other things, whether Plaintiff has complied with its obligations under the License Agreement, including but not limited to whether Plaintiff has satisfied any of the exclusivity requirements set forth in the License Agreement.

30.     Aetrex denies the allegations contained in Paragraph 30 of the Complaint.

## AS TO COUNT II OF THE COMPLAINT
### (Specific Performance)

31.     Aetrex repeats and reiterates each and every response set forth in Paragraphs 1 through 30 hereof, as if fully set forth herein.

32.     Aetrex denies the allegations contained in Paragraph 32 of the Complaint, except admits that the VS License Agreement exists, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning.

33.     Aetrex denies the allegations contained in Paragraph 33 of the Complaint, except admits that the VS License Agreement exists, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning.

34.     Aetrex denies the allegations contained in Paragraph 34 of the Complaint.

35.     Aetrex denies the allegations contained in Paragraph 35 of the Complaint.

36.     Aetrex denies the allegations contained in Paragraph 36 of the Complaint.

37.     Aetrex denies the allegations contained in Paragraph 37 of the Complaint.

38.     Aetrex denies the allegations contained in Paragraph 38 of the Complaint.

39.     Aetrex denies the allegations contained in Paragraph 39 of the Complaint.

## AS TO COUNT III OF THE COMPLAINT
(Breach of Contract)

40.     Aetrex repeats and reiterates each and every response set forth in Paragraphs 1 through 39 hereof, as if fully set forth herein.

41.     Aetrex denies the allegations contained in Paragraph 41 of the Complaint, except admits that the VS License Agreement exists, and respectfully refers the Court to said document and related relevant evidence for its complete terms and meaning.

42.     Aetrex denies the allegations contained in Paragraph 42 of the Complaint.

43.     Aetrex denies the allegations contained in Paragraph 43 of the Complaint.

44.     Aetrex denies the allegations contained in Paragraph 44 of the Complaint.

45.     Aetrex denies the allegations contained in Paragraph 45 of the Complaint.

46.     Aetrex denies the allegations contained in Paragraph 46 of the Complaint.

47.     Aetrex denies the allegations contained in Paragraph 47 of the Complaint.

48.     Aetrex denies the allegations contained in Paragraph 48 of the Complaint.

49.     Aetrex denies the allegations contained in Paragraph 49 of the Complaint.

50.     Aetrex denies the allegations contained in Paragraph 50 of the Complaint.

51.     Aetrex denies the allegations contained in Paragraph 51 of the Complaint.

52.     Aetrex denies the allegations contained in Paragraph 52 of the Complaint.

53.     Aetrex denies the allegations contained in Paragraph 53 of the Complaint.

54.     Aetrex denies the allegations contained in Paragraph 54 of the Complaint.

55.     Aetrex denies the allegations contained in Paragraph 55 of the Complaint.

## AS TO COUNT IV OF THE COMPLAINT
(Injunctive Relief)

56.    Aetrex repeats and reiterates each and every response set forth in Paragraphs 1 through 55 hereof, as if fully set forth herein.

57.    Aetrex denies the allegations contained in Paragraph 56 of the Complaint.

58.    Aetrex denies the allegations contained in Paragraph 57 of the Complaint.

59.    Aetrex denies the allegations contained in Paragraph 58 of the Complaint.

60.    Aetrex denies the allegations contained in Paragraph 59 of the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim or cause of action upon which relief may be granted, in part because it is premised upon allegations of facts that are demonstrably false as verified by independent evidence.

### SECOND DEFENSE

The Complaint should be dismissed in whole or in part on the grounds that Plaintiff has unclean hands.  Among other bases for this defense, Plaintiff is attempting to benefit from its own willful or other wrongdoing; namely, Plaintiff deceived Aetrex by misrepresenting and/or omitting material facts concerning Virtual Stores, conspiring with third-parties with respect to Virtual Stores and other matters, and fraudulently inducing Aetrex into entering into the VS Licensing Agreement by misrepresenting its intentions with respect to Virtual Stores, and has continued to perpetrate fraud to date.

### THIRD DEFENSE

The Complaint should be dismissed in whole or in part on the grounds that awarding the

remedy sought by Plaintiff would result in Plaintiff's unjust enrichment.  Among other bases for

this defense, Aetrex states that Plaintiff should not be enriched by obtaining Virtual Store

licensing rights by virtue of its own wrongful acts, particularly where the relief sought is not

supported by the terms and conditions of the applicable contracts, relevant facts, or intention of

the contracting parties involved.

## FOURTH DEFENSE

The Complaint should be dismissed in whole or in part because the delay, actions and

inactions of Plaintiff and/or third-parties other than Aetrex acting in concert with Plaintiff

prevented the performance of which Plaintiff complains.

## FIFTH DEFENSE

The Complaint should be dismissed in whole or in part based upon the doctrines of

waiver and/or estoppel.  Among other bases for this defense, Aetrex detrimentally relied upon the

misrepresentations of Plaintiff pertaining to Virtual Stores and its intentions with respect to

same.  Additionally, among other things, Plaintiff accepted or otherwise acquiesced to the actions

of which it now improperly complains and attempts to seek relief.

## SIXTH DEFENSE

The Complaint should be dismissed in whole or in part based upon the doctrine of laches.

Among other bases for this defense, Plaintiff unnecessarily delayed enforcement of its purported

rights without good cause, and Plaintiff accepted or otherwise acquiesced to the actions of which

it now improperly complains and attempts to seek relief.

## SEVENTH DEFENSE

The Complaint should be dismissed in whole or in part on the grounds that it is vague,

ambiguous, uncertain, and/or unintelligible.

## EIGHTH DEFENSE

The Complaint should be dismissed in whole or in part on the grounds that Plaintiff breached material terms and conditions of the agreements at issue along with their implied and express covenants and warranties, including but not limited to the implied covenant of good faith and fair dealing, which Plaintiff breached by (among other things) fabricating information to support its claims. In addition, Plaintiff breached the VS License Agreement by, among other things, failing to satisfy its obligations relating to the use of Aetrex's products and intellectual property, violating quality control requirements set forth in the VS License Agreement, failing to open Virtual Stores for the primary purpose of selling Aetrex's products, and failing to meet contractual requirements relating to the opening and maintenance of Virtual Stores. Plaintiff's breaches of the applicable agreements relieved Aetrex from performance thereunder.

## NINTH DEFENSE

The Complaint should be dismissed in whole or in part because the Court should rescind the VS License Agreement, and find it to be void *ab initio*, as a result of Plaintiff's fraudulent inducement of the VS Licensing Agreement, ongoing perpetration of fraud, and/or conspiring with third-parties to carry out same.

## TENTH DEFENSE

The Complaint should be dismissed in whole or in part on the grounds that Plaintiff has failed to perform all conditions precedent to Defendant's performance under the VS Licensing Agreement. Specifically, among other things, Plaintiff failed to timely open the minimum

number of Virtual Stores required to satisfy one of the Licensing Agreement's exclusivity requirements.

## ELEVENTH DEFENSE

The Complaint should be dismissed in whole or in part on the grounds that the cause of Plaintiff's alleged injuries was the intentional and illegal actions and inactions of Plaintiff and/or third-parties unrelated to Aetrex.

## TWELFTH DEFENSE

Plaintiff's claims are frivolous, subjecting Plaintiff to sanctions pursuant to (among other things) this Court's inherent authority and 28 U.S.C. § 1927.

WHEREFORE, Defendant/Counterclaim Plaintiff Aetrex respectfully requests that all claims asserted against it be dismissed with prejudice, and that the Court award Aetrex the reasonable attorneys' fees and costs incurred in defending this matter, and any other and further relief that the Court deems just and proper as a matter of law and/or equity.

24761.5

## VERIFIED COUNTERCLAIMS AGAINST JUST4FIT, INC.

### and

## VERIFIED THIRD-PARTY COMPLAINT OF AETREX WORLDWIDE, INC. AGAINST NOAM DANENBERG, INDIVIDUALLY; JUST4FIT ISRAEL, LTD.; MAVIDEX LTD. d/b/a BLUE BIRD SURF & URBAN; OFER MICHALOVKSI, INDIVIDUALLY; JOHN &/OR JANE DOES 1-25, AND ABC CORPORATIONS 1-25

Defendant/Counterclaimant/Third-Party Plaintiff Aetrex Worldwide, Inc. ("Aetrex") by

and through its counsel below, hereby asserts the following Counterclaims against Just4Fit, Inc.

("Just4Fit"); and a Third-Party Complaint against Noam Danenberg ("Danenberg") in his

individual capacity, Just4Fit Israel, Ltd. ("Just4Fit Israel"); Mavidex Ltd. d/b/a Blue Bird Surf &

Urban ("Blue Bird"), Ofer Michalovski ("Michalovski") in his individual capacity, John and/or

Jane Does 1-25, and ABC Corporations 1-25 (collectively, "Does") (collectively, all third-party

defendants are referred to as "Third-Party Defendants").

### PARTIES

1.      Aetrex is a corporation organized and existing under the laws of the State of New

Jersey, with a principal place of business at 414 Alfred Avenue, Teaneck, New Jersey 07666.

2.      Upon information and belief, Third-Party Defendant Danenberg is an individual,

who is a citizen of the Nation of Israel residing at 4 Borhov Street, Hod Hasharon 45204.  Upon

further information and belief, Danenberg maintains an office at 22 Hanagar Street Hod

Hasharon Israel 45114, and is a controlling shareholder of Just4Fit, and Just4Fit Israel, as well as

CEO, President, and/or other corporate director and/or officer of same.

3.      Upon information and belief, Just4Fit is a corporation organized and existing

under the laws of the State of Delaware, with a principal place of business at 22 Hanagar Street

Hod HaSharon, Israel 45114. Just4Fit's registered agent in the State of Delaware is PHS

Corporate Services, Inc., which has an office at 1313 N. Market Street, Wilmington, DE 19801.

    4.     Upon information and belief, Just4Fit Israel is a business entity organized and

existing under the laws of the Nation of Israel, with a principal place of business at 22 Hanagar

Street Hod HaSharon Israel 45114, and is an affiliate of Just4Fit. Upon further information and

belief, Just4Fit and Just4Fit Israel share officers and directors. Just4Fit Israel's transactions and

business dealings were conducted collaboratively with Just4Fit, and at least in part for the benefit

of Just4Fit.

    5.     Upon information and belief, Ofer Michalovski is an individual, who is a citizen

of the Nation of Israel, and resides at 13 Kashani Street, Tel Aviv, Israel 69499. Upon further

information and belief, Michalovski maintains an office at 22 Hanagar Street Hod Hasharon

Israel 45114, and is Vice President and/or other corporate director and/or officer of Just4Fit

and/or Just4Fit Israel.

    6.     Upon information and belief, Mavidex Ltd. d/b/a Blue Bird Surf & Urban is a

business entity organized and existing under the laws of the Nation of Israel, with a principal

place of business at Hanagar 101 Hod Hasharon, Israel 45240.

    7.     John and/or Jane Does 1-25 and ABC Corporations 1-25 are individuals or

entities, foreign and/or domestic, in the United States, Israel, and/or other countries, including

but not limited to corporations, partnerships, joint ventures, associations, or other forms of public

or private entities whose true names, the extent of their involvement, and/or capacities are

unknown to Aetrex at the time of filing this Counterclaim and Third-Party Complaint. Aetrex,

therefore, sues said Third-Party Defendants by such fictitious names and will ask leave of Court

24761.5

12

to amend this Complaint to show their true names, involvement, and/or capacities when the same have been ascertained.  Upon information and belief, each of the Doe Defendants are in some manner responsible for, or have participated in, the acts, omissions, and tortious, illegal, and breaching misconduct herein set forth, including but not limited to the deceitful, fraudulent, and false claims of Virtual Store openings, and proximately caused injury and damages to Aetrex as herein alleged.

8.      Aetrex is informed and believes, and thereon alleges, that at all times material hereto and mentioned herein, the Counterclaim Defendant and each of the Third-Party Defendants was the agent, servant, employer, joint venture, contractor, partner, division, owner, subsidiary, alias, and/or alter ego of the remaining Third-Party Defendants and/or Counterclaim Defendant, and each was, at all times, acting within the purpose and scope of such agency, servitude, employment, contract, ownership, subsidiary, alias and/or alter ego and with the authority, consent, approval, control, influence and ratification of each remaining Third-Party Defendant and/or Counterclaim Defendant sued herein.

9.      Counterclaim Defendant and each of the Third-Party Defendants are liable for the harm described herein, jointly, severally and/or in the alternative.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332.  The underlying action initiated by Just4Fit against Aetrex was removed from Delaware State Court as a matter of right as there is complete diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11.     Additionally, this Court has subject matter jurisdiction over Aetrex's counterclaims and third-party claims for violations of the federal Racketeer Influenced and Corrupt Organizations Act ("Civil RICO"), 18 U.S.C. § 1961, et seq., under 18 U.S.C. §§ 1964(a) and 1964(c), and 28 U.S.C. § 1331. This Court has subject matter jurisdiction as defined in *Younger v. Harris*, 401 U.S. 37 (1971). This Court has personal and subject matter jurisdiction over triable federal questions involving 18 U.S.C. §§ 1961 -1965, et seq., Racketeer Influenced and Corrupt Organizations Act of 1970 (hereinafter, "RICO"), 18 U.S.C. §1961-§1965 et seq; §1961(1)(A) (B) (D); §1961(6), et seq., selected 18 U.S.C. § 1961 through § 1965, and this Court has supplemental jurisdiction over Aetrex's claims to the extent same are based on state and common law.

12.     This Court has personal jurisdiction over Just4Fit by virtue of, among other things, the Virtual Store License Agreement by and between Aetrex and Just4Fit pursuant to which Just4Fit has consented to the jurisdiction and venue of United States District Court for the District of Delaware. Additionally, this Court has personal jurisdiction over Just4Fit by virtue of, among other things: (i) its presence in Delaware; (ii) its registration to do business in Delaware, including its appointment of a registered agent for the receipt of service of process in Delaware; (iii) its filing of the underlying lawsuit in Delaware; (iv) its continuous and systematic contacts with Delaware and the United States; and (v) its course of conduct caused the performance of tortious acts that resulted in foreseeable harm in Delaware and the United States.

13.     Danenberg, Michalovski, Blue Bird, and the Does are subject to personal jurisdiction by virtue of, *inter alia*, one or more of the following: (i) each being an owner, director and/or officer of a corporate entity organized under the laws of the State of Delaware,

Just4Fit; (ii) each having committed, aided, abetted, contributed to, participated in, and/or induced intentional, illegal, unlawful, and tortious acts, including but not limited to, fraud and conspiracy, in this judicial district by, for example, fraudulently inducing Aetrex to enter into a Virtual Store License Agreement ("VS License Agreement" or "License Agreement") in the venue of this judicial district, and perpetrated ongoing fraud therein – the VS License Agreement included licensing rights in this judicial district as well as elsewhere in the United States; (iii) Danenberg, Michalovski, Blue Bird and the Does have acted and continue to act in concert and active participation with each other in committing the wrongful acts alleged herein; (iv) each having fabricated the establishment and opening of Virtual Stores in order to knowingly and intentionally feign compliance with the VS License Agreement, which contains Delaware choice of law and forum selection provisions; (v) each having knowingly and intentionally placed iStep machines in various Israeli locations to deceive Aetrex into maintaining an exclusive worldwide license for Virtual Stores to Just4Fit; (vi) Just4Fit Israel and Michalovski are the registrants of the domain "just4fit.com," which contains false and misleading information so as to perpetrate fraud and other torts in this jurisdiction; and/or (vii) each, at all times relevant hereto, conducted knowing and intentional tortious business practices in the State of Delaware by and through Just4fit, their Delaware entity, at least in part for their own benefit, which has led to foreseeable harm and injury to Aetrex and others.

14.    Moreover, this Court has personal jurisdiction over each of the Third-Party Defendants because: (i), through their direct or indirect investments, each unlawfully solicited funds from third-party investors, or have provided investment funds in the Just4Fit entity for their own personal gain and for the sole express purpose of funding the underlying lawsuit filed

by Just4Fit against Aetrex in Delaware Chancery Court; (ii) through their actions of supporting the scheme to establish non-existent Virtual Stores, they have funded and supported the filing of the underlying lawsuit of Just4Fit in the Delaware Chancery Court, as explicitly confirmed by Danenberg in writing, and have accordingly submitted themselves to the jurisdiction of this Court and availed themselves of the laws and protections of Delaware and the United States either directly or indirectly; (iii) upon information and belief, Third-Party Defendants are the principals of Counterclaim Defendant Just4Fit; and/or (iv) upon further information and belief, they are the conscious, active and dominant forces behind the wrongful, intentional and illegal activities of Just4Fit complained of herein.

15. In the alternative, Danenberg, Michalovski, Blue Bird, and Does are subject to the jurisdiction of this Court pursuant to 10 *Del. C.* § 3104. Specifically, each of these Third-Party Defendants caused tortious injury in Delaware; namely, the torts of fraud, conspiracy, and misrepresentation, engaged in a persistent course of conduct in Delaware, and derives substantial revenue from things used or consumed in Delaware.

16. This Court has personal jurisdiction over each of the Counterclaim Defendant and Third-Party Defendants for the additional reasons set forth below and for other reasons that will be presented to the Court if such jurisdiction is challenged.

24761.5

16

## FACTS

### Background

17.     Aetrex is a world leader in selling comfort footwear and orthotics, and has been in business for more than sixty years.

18.     Since 2002, Aetrex has invested millions of dollars in developing and marketing electronic foot measuring systems known as "iSteps," which it sells or leases to commercial establishments around the world.  These commercial establishments include, among others, shoe stores, pharmacies, doctors' offices, running stores, and medical facilities.  (Attached hereto as Exhibit A are photographs depicting several examples of operational iStep systems that have been sold or leased by Aetrex).

19.     Commercial establishments purchase or lease Aetrex iStep systems to measure and analyze their customers' feet so as to determine, for example, arch type, pressure points and foot size.  These measurements and analyses help fit customers with orthotics and shoes, and provide for the best fit and customer experience possible.

20.     Aetrex originally purchased the iStep equipment from Fitracks, Inc. ("Fitracks"), which was upon information and belief a company created, owned and controlled primarily by Noam Danenberg ("Danenberg").

21.     At all relevant times, Danenberg, Fitracks, and Fitrack's shareholders knew and approved of how Aetrex was utilizing, marketing, leasing, and selling the iStep equipment.  Consequently, the business relationship grew and was mutually rewarding.

22.     After many years of conducting business together, Aetrex essentially built Fitrack's business.  On information and belief, Aetrex's business accounted for approximately

24761.5

80% of Fitracks' total revenues, with Fitracks' annual sales from sources other than Aetrex at only approximately $500,000.

23.     Fitracks was primarily a small electronics equipment manufacturer that held several narrow patents. Aetrex built the software necessary to operate the iStep systems and, in so doing, further contributed toward building the business of Fitracks as a whole.

24.     Despite the fact that Aetrex's contributions formed the foundation of Fitrack's survival and existence, Danenberg frequently threatened to sell Fitracks to Aetrex's competitors and/or to restrict Aetrex's iStep international selling rights if Aetrex did not purchase Fitracks.

25.     In 2008, Aetrex decided to purchase Fitracks. In addition to comprising the majority of Fitracks' business, it also seemed to be a practical business decision for Aetrex to extinguish Danenberg's ongoing threats to sell to a competitor or remove Aetrex's selling rights, and to directly assume the technology and equipment that comprises a core part of its business.

26.     Since approximately 2002, and continuing to the present, Aetrex developed and integrated the iStep systems into the mainstream of its business.

27.     At all relevant times, Danenberg and the shareholders of Fitracks were aware of how Aetrex marketed, sold and leased its iStep systems to commercial establishments all over the world in the form of various kiosk packages and displays. Such kiosks often feature and display shoes, orthotics and other accessories around the iStep equipment. (*See, e.g.,* Ex. A).

28.     By way of example and not limitation, for many years, several Fitracks employees worked out of Aetrex's offices and were closely involved with the iStep-related transactions. Additionally, since Aetrex listed all of its iStep customers' identities and locations online for

public viewing, they were made known to Fitracks and were readily available and accessible to anyone at anytime.

29.     At various times, Danenberg solicited Aetrex with an idea to develop a "Virtual Store" concept. This concept was described by Danenberg to be an elaborate, visibly beautiful, free-standing, self-sufficient retail setup that was very different from the iStep packages that Aetrex was selling and/or leasing. Danenberg provided Aetrex with detailed documents, illustrations, videos, promotional materials and representations of the "Virtual Store" he claimed to be developing. (Attached hereto as Exhibit B are several examples of the many representations made to Aetrex and provided by Danenberg as to the intended appearance and written description of Virtual Stores).

30.     Danenberg represented to Aetrex that he was going to develop and open "Virtual Stores" primarily to sell Aetrex shoes and orthotics. This, he said, would compliment and be different from Aetrex's existing iStep business.

31.     At all relevant times, Danenberg represented to Aetrex that the "Virtual Store" would be a eye-catching, elaborate, unique and innovative retail concept that was distinct from Aetrex's existing business.

32.     This is reflected not only in the promotional materials, contracting documents, and representations that Danenberg provided to Aetrex, but also in the materials Danenberg distributed to the public and his shareholders, including but not limited to the representations on "justf4fit.com" and "youtube.com." These representations clearly establish the Virtual store concept as distinct, separate and apart from any business in which Aetrex was or is engaged.

33.     As discussed in more detail below, Danenberg's representations as to the intended purpose and appearance of Virtual Stores were false, and intended to induce Aetrex to enter into the VS License Agreement, which it did.

**The Aetrex/Fitracks Merger**

34.     Aetrex executed a Merger Agreement to purchase Fitracks from Danenberg and the other Fitracks shareholders on or about May 15, 2008 (the "Merger Agreement"). (Attached hereto as Exhibit C is a true and correct copy of the Merger Agreement).

35.     At no time did Aetrex ever indicate an interest, desire or intent to sell or license away any portion of its iStep business that it had invested so many years and so much money in building. Nor did any of the contracts executed in connection with the merger reflect any such desire by Aetrex.

36.     When Aetrex purchased Fitracks and its iStep technology in 2008, the purchase consideration consisted of (a) a lump sum payment in the amount of $3,900,000, and (b) post merger consideration in the form of an earnout fee to Danenberg and the Fitracks' selling shareholders of primarily $500 for each iStep unit Aetrex sold for a period of 10 years.

37.     Additionally, Danenberg repeatedly advised Aetrex that he required the Virtual Store licensing rights so as to placate and convince the Fitracks shareholders who were critical of the deal to agree.

38.     Danenberg repeatedly advised Aetrex that granting him Virtual Store licensing rights would be for the express benefit of Aetrex and that there would be "no down side to Aetrex."

24761.5

39.     Since signing the Merger Agreement, Aetrex has made its quarterly post merger earnout payments as required under the Merger Agreement.  Also as required under the Merger Agreement, with each quarterly payment, Aetrex has provided Danenberg with a detailed report naming the locations of each iStep placement.  The identities and locations of Aetrex iStep customers are also posted by Aetrex on its website and have at all relevant times been available and accessible to Danenberg.

40.     Danenberg and the other Fitracks shareholders have accepted Aetrex's post merger earnout payments without issue or objection.

**The Virtual Store Licensing Agreement**

41.     In reliance on Danenberg's representations regarding (among other things) the intended purpose and appearance of Virtual Stores, Aetrex agreed to grant Danenberg a limited license to open Virtual Stores in the form that Danenberg had represented to Aetrex prior to signing the VS License Agreement.  (*See* Ex. B for examples of Danenberg's representations as to the intended appearance and written description of Virtual Stores).

42.     The Merger Agreement stated, as represented by Danenberg before it was executed, that the entity that would become the Virtual Store licensee, "shall be created for the express purpose of marketing and selling [Aetrex's] products through Virtual Stores." (Ex. C: Merger Agreement Paragraph 6.03(a)).  The entity that was ultimately created to be the Virtual Store licensee is Plaintiff/Counterclaim Defendant Just4Fit.

43.     Pursuant to the VS Licensing Agreement that was executed in connection with the merger, in order to maintain an exclusive worldwide license to the Virtual Store concept,

Danenberg was required to open 25 Virtual Stores by July 1, 2010. (Attached hereto as Exhibit D is a true and correct copy of the VS License Agreement; *see* ¶ 2(d)).

44.     The VS License Agreement was negotiated at arm's length. Danenberg clearly understood the milestones that had to be achieved by July 1, 2010 in order to remain an exclusive licensee of Aetrex for Virtual Stores.

**To Date, Just4Fit Has Opened No Virtual Stores**

45.     For a period of two years from Aetrex's granting the Virtual Store license to Danenberg's business, Danenberg did nothing to develop or open any Virtual Stores anywhere in the world.

46.     In the Spring of 2010, Danenberg requested that Aetrex grant him an extension of the VS Licensing Agreement's July 1, 2010 deadline for opening 25 Virtual Stores. Aetrex refused, primarily because of Danenberg's failure to provide any evidence of any diligent attempt to open even a single Virtual Store to that point in time.

47.     Instead of providing information to Aetrex, Danenberg attempted to salvage exclusive Virtual Store license rights by engaging in a course of action that would subsequently reveal, by incriminating independent evidence, a web of deceit, lies, and sham Virtual Stores.

48.     As part of this scheme, Danenberg falsely accused Aetrex of breaching the VS License Agreement, when in fact Aetrex had fulfilled every obligation it had under that License Agreement.

49.     On June 30, 2010 – just one day before the July 1 deadline – Counterclaim Defendant, Just4Fit, and the Third-Party Defendants madly raced about Israel and merely placed iStep machines – without anything more – in Blue Bird surf shops, claiming that this would

satisfy the VS License Agreement's requirement that 25 Virtual Stores be opened by July 1, 2010.

50.     Danenberg kept his alleged Virtual Store setups hidden from Aetrex.  Danenberg provided no details to Aetrex.  Nor did he seek any pre-approvals from Aetrex regarding his use of Aetrex's intellectual property, iStep machines, marks, and products even though the VS Licensing Agreement required him to do so.  (*See* Ex. D, ¶ 12).

51.     On information and belief, in violation of the VS License Agreement and Merger Agreement, Danenberg improperly communicated with Aetrex's competitors regarding proposed Virtual Stores in an attempt to pitch the idea to those competitors.  In addition, Danenberg failed to include Aetrex in the placement and marketing of Virtual Stores, and in an apparent effort to raise additional funds, made knowingly false statements and representations to current and prospective shareholders of Just4Fit, regarding (among other things) his purported exclusive license for Virtual Stores.

52.     On information and belief, Danenberg was wrongfully using monies raised for the Virtual Store concept for unrelated projects.

53.     During May and June of 2010, Aetrex repeatedly reached out and requested that Danenberg provide details regarding the locations of the proposed Virtual Stores, the setup of the Virtual Stores, and the intended use of Aetrex's intellectual property.  However, Danenberg was elusive and unresponsive.

54.     During May and June 2010, Danenberg represented to Aetrex – and Just4Fit shareholders – that he was going to open 25 Virtual Stores by July 1, 2010.

55.     On or about June 3, 2010, Danenberg emailed Aetrex and advised that "we are opening 25 Virtual Stores during the month of June." (Attached hereto as Exhibit E is a true and correct copy of Danenberg's June 3, 2010 email).

56.     On June 4, 2010, Aetrex sent Danenberg an extensive email outlining the serious problems Danenberg was creating and the impending contractual violations he would be facing if these issues were not addressed and cured. (Attached hereto as Exhibit F is a true and correct copy of Aetrex's June 4, 2010 email to Danenberg). By way of example and not limitation: (i) Danenberg delayed addressing his exclusivity deadline until immediately before the expiration date; (ii) Danenberg had not provided any details to Aetrex about the locations of his planned Virtual Stores; (iii) Danenberg had not provided to Aetrex for approval any advertisements, signage, promotional materials, etc. that contained Aetrex's marks and other intellectual property as required by the VS Licensing Agreement; (iv) Danenberg was speaking with competitors, and was not honoring his pre-contract representations and post-contractual obligation to primarily promote Aetrex products; and (v) Danenberg was conducting his plans in a secret manner and did not communicate with Aetrex so that Aetrex could pre-approve Just4Fit's use of Aetrex's intellectual property as required under the Licensing Agreement.

57.     Danenberg's response was simply to turn a deaf ear, deny any wrongdoing and defer to his legal counsel.

58.     On June 29, 2010, just two days before the July 1 deadline, Danenberg falsely informed Just4Fit's stockholders that Just4Fit, "intends to meet its contractual obligations and open 25 Virtual Stores before July 1, 2010. Opening the 25 Virtual Stores are required to maintain the exclusivity granted in the license Agreement with Aetrex." (Attached as Exhibit G

hereto is a true and correct copy of Danenberg's June 29, 2010 email to "Stockholders"). This email makes clear that Danenberg understood that opening 25 Virtual Stores by July 1, 2010 was a condition precedent to Just4Fit's ability to maintain a worldwide exclusive license for Virtual Stores pursuant to the VS Licensing Agreement. The email also confirms beyond doubt that as of June 29, 2010, Danenberg knew that Just4Fit had not satisfied that condition precedent.

59.     On or about July 5, 2010, Danenberg emailed Aetrex, attaching a list of 25 purported Virtual Stores which he falsely claimed were "opened by Just4Fit before July 1, 2010." (Attached hereto as Exhibit H is a true and correct copy of Danenberg's July 5, 2010 email to Aetrex). This communication also falsely stated that each of these 25 purported Virtual Stores were "Online." In the two years prior to July 1, 2010, Danenberg did essentially nothing to bring the Virtual Store concept to reality.

60.     Danenberg's July 5, 2010 email also attached a letter dated July 4, 2010 and written in Hebrew from Blue Bird Surf & Urban ("Blue Bird"), in which Blue Bird supported Danenberg's lying and deceit by fraudulently indicating that Blue Bird had the Virtual Stores in its retail locations. (*See id.*). On information and belief, Danenberg also provided this list and Blue Bird's letter to Just4Fit's shareholders and investors, notwithstanding their falsity.

**Just4Fit's Purported Virtual Stores Were A Sham**

61.     Undisputed, independent video and photographic evidence demonstrates beyond peradventure the deceit, trickery, and lying engaged in by Just4Fit and each of the Third-Party Defendants with respect to Virtual Stores. Indeed, the post-July 1, 2010 falsities and fraud relating to Virtual Stores being "online" are plain for the world to see on Just4Fit's website – "just4fit.com" – which shows no Virtual Stores in existence and no Virtual Store online

24761.5

25

capabilities.  A review of that website on November 1, 2010 confirms that even as of that late

date, Just4Fit had no Virtual Stores in existence and no Virtual Store online capabilities.

62.     At all relevant times, Danenberg knew Just4Fit would not meet the July 1, 2010

deadline, thereby making knowingly false statements and misrepresentations to Aetrex and his

shareholders regarding the company's business activities.

63.     Through independent investigation, Aetrex has documented that Danenberg did

not open a single Virtual Store.  Aetrex inspected more than fifteen of the "Blue Bird" surf shop

locations appearing on Just4Fit's July 5, 2010 list and confirmed that, contrary to Danenberg's

representations, none of those locations contained an operational Virtual Store as of the post-July

1, 2010 inspection date.

64.     Aetrex also has video evidence and photographs from at least ten locations on

Danenberg's list, and from multiple individual and independent sources, which establishes that

no Virtual Stores existed as of the post-July 1, 2010 dates that the videos/photographs were

generated.  (Attached hereto as Exhibit I are a sample of the post-July 1, 2020 photographs that

establish beyond doubt that none of the inspected Blue Bird locations contained a Virtual Store

and that Just4Fit and each of the Third-Party Defendants simply lied about the purported

existence of Virtual Stores) (the photographs included in Exhibit I contain by way of example,

and not limitation, many examples of how the claimed Virtual Stores actually appeared in July

2010).

65.     As demonstrated in Exhibit I, the Virtual Stores that Danenberg claims to have

opened were nothing of the sort.  At best, Danenberg merely placed in stores a foot measuring

device – by itself – and without and surrounding signage, merchandise or promotional materials.

Moreover, Exhibit I and additional documentation establish that these bare foot measuring machines were located under clothing racks, behind boxes and otherwise strewn about Blue Bird stores. Such placements do not even remotely satisfy the VS License Agreement's definition of "Virtual Store." Nor do they even remotely resemble the pre-contract photographic and other representations made to Aetrex by Danenberg in order to induce Aetrex to execute the VS License Agreement.

66.     Witness statements from Blue Bird store employees offer additional confirmation. Uninformed Blue Bird sales people, non-operational equipment, and concealed equipment placement are but a few evidentiary factors documented in the video evidence. Some of the Blue Bird stores did not even have iStep machines.

67.     The list of 25 Virtual Stores provided by Just4Fit to Aetrex was a complete fabrication.

68.     A Virtual Store is defined in the VS License Agreement, in relevant part, to mean:

> (i)    ". . . a non-shoe store environment (such as a booth, stall or kiosk) at a fixed site. . . " (See Paragraph 2a of Virtual Store License Agreement).

> (ii)    ". . . which contains single or multiple foot-measuring devices and is intended to function as a promoter and direct seller of customized footwear products, including without limitation, insoles and shoes, and which shall occupy a space of not more than 150 square feet."

(Ex. D: VS License Agreement ¶ 2(a)).

69.     The definition of Virtual Stores set forth in the VS License Agreement supports and was intended to match the Virtual Store concept as described and promoted by Danenberg in his illustrations, descriptions, videos, and the many materials he provided. (*See, e.g.,* Ex. B). In

actuality, however, no such Virtual Stores were created by Danenberg, Just4Fit or any related

person or entity. Only one of the inspected locations had a small kiosk-type housing, but even

that was not even remotely similar to what Danenberg had promised to provide. None of the

other inspected locations had any booths or stalls -- at most, they had a single iStep machine

laying somewhere on the floor.

70.    iSteps devices alone are not Virtual Stores, even if they had been operational at

the deadline.

71.    The VS License Agreement's definition of "Virtual Stores" requires that an iStep

or other foot measuring device be "contained" within a Virtual Store. (*See* Ex. D: VS License

Agreement ¶ 2(a)).

72.    Likewise, the VS License Agreement provides that: "Notwithstanding anything in

this Agreement to the contrary, Licensee understands and agrees that all foot-measuring

technology products (such as iStep and Quick2Fit and SP5000) are for use **in** the operations of its

Virtual Stores and not for sale to retail consumers." (*See id.* ¶ 2(c)) (emphasis added).

73.    No structure existed at any of the locations identified on Danenberg's July 5, 2010

list of purported Virtual Stores. At most, those locations had an iStep machine laying

somewhere in the store, often under racks or other items that completely obscured them from

view. (*See* Ex. I). The iStep machines were "in" nothing.

74.    At no point in time did Counterclaim Defendant or the Third-Party Defendants

create any Virtual Stores "containing" iSteps. Nor did they promote Aetrex products, have any

properly operational iSteps, or have any trained people to assist consumers.

75.     Aetrex made the incriminating video and other evidence it had accumulated after the July 1, 2010 deadline available for inspection by Danenberg or his attorneys at their convenience on multiple occasions.  Danenberg and his lawyers have refused to view this damning evidence, which is further indicative of the lies Danenberg and the Third-Party Defendants have told.  (Attached hereto as Exhibit J is a true and correct copy of Aetrex's counsel's August 4, 2010 letter to Just4Fit's counsel (*see* p. 2), and an October 8, 2010 email from Aetrex to Danenberg).

76.     Moreover, Aetrex further uncovered an elaborate conspiracy of fraud and deceit by Danenberg, and the Third-Party Defendants, each of whom participated in the knowing and intentional attempts to fabricate the existence of the alleged Virtual Stores.  Their scheme has deceived Aetrex, the public and Just4Fit's investors of monies for the purpose of padding their own bank accounts, to fund a frivolous lawsuit against Aetrex, and to try to maintain an unearned worldwide exclusive license for Virtual Stores, in part to try to save face with his investors.  As demonstrated herein, and as record evidence will reveal as this litigation proceeds, Counterclaim Defendant and the Third-Party Defendants' lies and trickery have been uncovered and revealed.

77.     For example, it has been discovered that the Blue Bird stores in which Danenberg placed the iStep machines are owned and/or operated by Gidi Goldfinger, who is the brother of Yair Goldfinger, a major shareholder of Just4Fit.  The fact that Blue Bird's CEO is the brother of Just4Fit's major shareholder further corroborates the illicit conspiracy to place iStep machines in an eleventh-hour attempt to claim exclusive Virtual Store rights.

78.     Blue Bird conspired with Danenberg by, among other things, permitting placement of some iStep machines in a slipshod and concealed manner, and thereafter falsely

claiming, in writing, that Virtual Stores had been opened prior to July 1, 2010. This ruse was used to make a false claim to exclusive Virtual Store licensing rights to Aetrex, to try and push Aetrex out of its iStep business (in which it has engaged since first doing business with Fitracks), and to illegally raise investment monies that have been misappropriated.

79.     Rather than correcting his misstatements and misrepresentations, Danenberg and his co-conspirators compounded them by contriving an elaborate story in an effort to blame Aetrex for their alleged difficulties in opening Virtual Stores. Aetrex did nothing wrong here.

80.     It is evident that Danenberg had no intention at any time to open Virtual Stores as contemplated by the VS License Agreement and his pre-contract representations. Rather, Danenberg's true intent was to re-sell whatever rights he possessed, or to fraudulently obtain investor money, without actually creating anything. Danenberg's actions in this regard were taken for illicit purposes.

81.     On or about July 19, 2010, Danenberg and his co-conspirators raised additional capital for the Just4Fit entity for the sole purpose of raising funds to file a frivolous lawsuit against Aetrex. (Attached hereto as Exhibit K is a true and correct copy of Danenberg's July 19, 2010 email to "Stockholders"; *see* p. 2).

82.     Danenberg's false statements continue to damage the good name, goodwill and reputation of Aetrex.

83.     Danenberg continues to fraudulently and illegally raise investment money for Just4Fit by making false claims about Aetrex, to Aetrex's detriment.

84.     Furthermore, on information and belief, Danenberg is misappropriating post consideration earnout monies paid by Aetrex under the Merger Agreement, which monies are

supposed to be for the benefit of the specific equity holders who sold Fitracks to Aetrex. On information and belief, Danenberg is improperly using those earnout monies to the detriment of those Fitracks shareholders for the benefit of his Virtual Store scheme and lawsuit, which involves a separate group of equity holders.

85.    These monies were misappropriated and solicited in part based on the Virtual Store fabrication devised and implemented by Counterclaim Defendant and each of the Third-Party Defendants, and the disparagement of Aetrex that formed the basis of Just4Fit's frivolous claims against Aetrex related to the Virtual Store failures.

86.    Rather than even looking at the voluminous evidence establishing the falsity of Danenberg's representations regarding the establishment of Virtual Stores, Danenberg chose to file a frivolous lawsuit that he and the Third-Party Defendants know to be based on falsehoods.

87.    Third-Party Defendant Ofer Michalovski signed a false sworn statement to this Court attesting to the veracity of the allegations in Just4Fit's complaint. However, these sworn statements are demonstrably false, as is amply confirmed in Exhibit I and other evidence obtained by Aetrex. Moreover, upon information and belief, Michalovski knew that his verification was false when he signed it and allowed it to be filed in this Court.

88.    Danenberg's belated and haphazard placement of some iStep equipment, which was not operational, and which in some cases were concealed under clothing racks and behind boxes in Blue Bird "surf shop" locations, and some not even placed in the Blue Bird stores, are far from the definition of "Virtual Store" set forth in the VS License Agreement. They are not even remotely similar to Danenberg's pre-contract, and post-contract, representations of what the Virtual Stores would look like. However, Danenberg's representations in that regard induced

Aetrex to enter into the VS License Agreement.  Nor are Danenberg's alleged Virtual Stores compatible with Aetrex's high quality products and vision – indeed, the iStep machines in the alleged Virtual Store locations identified by Danenberg have been placed in such a deplorable and disparaging manner as to be damaging Aetrex's name, reputation and goodwill.

89.     Danenberg's intentional misconduct and false statements have and continue to seriously and negatively impact the reputation and goodwill of Aetrex, its employees, and its products.

90.     On or about July 13, 2010, Aetrex declared the Virtual Store license granted to Just4Fit pursuant to the VS License Agreement to be non-exclusive as a result of Just4Fit's failure to fulfill its obligations for exclusivity under the VS License Agreement.  (Attached hereto as Exhibit L is a true and correct copy of Aetrex's July 13, 2010 letter).  Aetrex has at all times honored all of its obligations under the VS License Agreement.

91.     Danenberg somehow now intentionally and unlawfully claims that he is entitled to an exclusive Virtual Store license, and a significant portion of Aetrex's iStep's established business.  He is not so entitled.

## COUNT I
(Rescission of VS Licensing Agreement Based Upon Fraud – Against Just4Fit)

92.     Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1 through 91, as if fully set forth herein.

93.     Prior to the execution of the VS Licensing Agreement, Danenberg made numerous material misrepresentations to Aetrex by means of oral statements, documents, drawings, videos, illustrations and other promotional materials, including but not limited to:  a)

24761.5

that the Virtual Stores would be elaborate and unique, and designed to sell footwear and orthotics (*see, e.g.* Ex. B); b) that Virtual Stores would not be at all similar to Aetrex's existing iStep business; c) that Virtual Stores would have an online capability such that customers could order Aetrex shoes directly from the Virtual Stores; d) that Virtual Stores would be eye-catching and attractive; e) that Just4Fit was ready, willing and able to sell, build, maintain and service Virtual Stores in Israel and around the world; f) that Just4Fit would operate Virtual Stores primarily to promote and/or sell Aetrex products; and g) that there was "no down side to Aetrex."

94.     Danenberg is an officer, director and/or principal of Just4Fit and made these misrepresentations on Just4Fit's behalf.

95.     Danenberg knew that these representations were false when made.

96.     Danenberg made these misrepresentations on Just4Fit's behalf in order to induce Aetrex to enter into the VS License Agreement.

97.     Aetrex in fact relied upon Danenberg's misrepresentations in agreeing to enter into the VS License Agreement.  Aetrex's reliance upon Danenberg's misrepresentations was reasonable in light of, among other things, the parties' lengthy history of business dealings.

98.     Aetrex would not have entered into the VS License Agreement had it been aware of the falsity of Danenberg's representations.

99.     In light of Just4Fit's fraudulent inducement, the VS Licensing agreement should be rescinded in its entirety and found to be void *ab initio*.

## COUNT II
(Rescission of VS Licensing Agreement Based Upon Misrepresentation -- Against Just4Fit)

100.     Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1 through 99, as if fully set forth herein.

24761.5

33

101.    Prior to the execution of the VS Licensing Agreement, Danenberg made numerous material misrepresentations to Aetrex by means of oral statements, documents, drawings, videos, illustrations and other promotional materials, including but not limited to: a) that the Virtual Stores would be elaborate and unique, and designed to sell footwear and orthotics (*see, e.g.* Ex. B); b) that Virtual Stores would not be at all similar to Aetrex's existing iStep business; c) that Virtual Stores would have an online capability such that customers could order Aetrex shoes directly from the Virtual Stores; d) that Virtual Stores would be eye-catching and attractive; e) that Just4Fit was ready, willing and able to sell, build, maintain and service Virtual Stores in Israel and around the world; f) that Just4Fit would operate Virtual Stores primarily to promote and/or sell Aetrex products; and g) that there was "no down side to Aetrex."

102.    Danenberg is an officer, director and/or principal of Just4Fit and made these misrepresentations on Just4Fit's behalf.

103.    Danenberg's misrepresentations were material to Aetrex's decision to enter into the VS Licensing Agreement.

104.    Aetrex in fact relied upon Danenberg's misrepresentations in agreeing to enter into the VS License Agreement.  Aetrex's reliance upon Danenberg's misrepresentations was reasonable in light of, among other things, the parties' lengthy history of business dealings.

105.    Aetrex would not have entered into the VS License Agreement had it been aware of the falsity of Danenberg's representations.

106.    In light of Just4Fit's misrepresentation of material facts through Danenberg, the VS Licensing agreement should be rescinded in its entirety and found to be void *ab initio*.

## COUNT III
(Breach of Contract – Against Just4Fit)

107.    Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1

through 106, as if fully set forth herein.

108.    Aetrex entered into a valid and enforceable VS License Agreement under which

Just4Fit was obligated to open 25 Virtual Stores by July 1, 2010 in order to maintain an exclusive

license relating to Virtual Stores.

109.    Aetrex has complied with all of its obligations under the VS License Agreement.

110.    Just4Fit failed to open 25 Virtual Stores within the required time limit.

111.    Pursuant to the VS License Agreement, Just4Fit, as a licensee, was required to

adhere to specific quality control and intellectual property guidelines with respect to Aetrex's

name, products, goodwill and intellectual property.  In addition, Just4Fit had to seek and obtain

Aetrex's prior written approval of any and all advertising, marketing and promotional materials

that included, among other things, Aetrex's name and marks, and use of the iStep.

112.    Specifically, Paragraph 12 of the VS License Agreement states:

> **12. QUALITY STANDARDS.**  Licensee acknowledges that
> Aetrex has made a substantial investment in developing and
> manufacturing Products of high quality and design and developing
> and fostering an image and reputation of high quality, design,
> prestige and integrity under its Licensed Trademarks and that the
> consuming public and industry now associate the Licensed
> Trademarks with products of consistently high quality and design.
> Accordingly, marketing and selling the Products, **Licensee shall:**
> **(i)  conduct business in a safe and professional manner that**
> **reflects favorably at all times on the Products, Aetrex's the**
> **Licensed Trademarks and the good name, goodwill and**
> **reputation of Aetrex; (ii) avoid deceptive, misleading or**
> **unethical practices that are or might be detrimental to Aetrex,**
> **the Products, the Licensed Trademarks, or the public,**
> **including, without limitation, disparagement of Aetrex or the**
> **Products; (iii) not publish or use any misleading or deceptive**

**advertising material;** and (iv) make no representations with respect to the Products that are inconsistent with any literature that may be distributed by Aetrex to Licensee, including without limitation, any warranties and disclaimers contained therein. Licensee shall include in all advertising all applicable copyright, trademark, and other proprietary or restrictive rights notices as they appear on or in the Products and Licensed Trademarks. **Additionally, Licensee shall submit to Aetrex for prior written approval, samples of all advertising and other promotional and marketing materials, of any type and kind whatsoever, including without limitation, print, electronic, and other media, which feature the Licensed Trademarks, Products, or Intellectual Property of Aetrex which Licensee desires to use to promote its Licensed Rights and/or Virtual Stores,** including without limitation, press releases and interviews for publication. **The approval of Aetrex or the exercise of its discretion hereunder shall be at the absolute and sole subjective discretion of Aetrex.**

(Ex. D:  VS License Agreement ¶ 12) (emphasis added).

113.    Just4Fit breached Article 12 of the VS License Agreement by, among other things, failing to:  a) conduct its business in a professional manner that reflects favorably on Aetrex, and Aetrex's products, trademarks, good name, goodwill and reputation; b) avoid deceptive, misleading or unethical practices that are or might be detrimental to Aetrex, and Aetrex's products, trademarks, good name, goodwill and reputation; and c) submit to Aetrex for prior written approval samples of all use of iStep and other Aetrex products, advertising and other promotional and marketing materials of any type and kind whatsoever that feature Aetrex's trademarks, products and/or intellectual property.

114.    Just4Fit's breach of the VS License Agreement has caused damage to Aetrex in an amount to be determined at trial.

**COUNT IV**

(Breach of the Implied Covenant of Good Faith and Fair Dealing – Against Just4Fit)

115.    Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1 through 114, as if fully set forth herein.

116.    Every contract, including the VS License Agreement, contains an implied covenant of good faith and fair dealing.  In addition to numerous express covenants, the VS License Agreement contained an implied covenant that Just4Fit would not act in a manner that would dilute or otherwise negatively affect Aetrex's good name, public image, goodwill, and reputation.

117.    Not only did Just4Fit's haphazard placement of iStep machines in approximately 25 stores in Israel not satisfy the Virtual Store definition or exclusivity requirements in the VS License Agreement, it affirmatively damaged Aetrex's good name, public image, goodwill and reputation.

118.    Just4Fit's actions in this regard, and others, constitute a breach of the implied covenant of good faith and fair dealing with respect to the protection of Aetrex's good name, public image, goodwill and reputation.

119.    Just4Fit's breach of the implied covenant of good faith and fair dealing has caused Aetrex to suffer damages in an amount to be determined at trial.

24761.5

## COUNT V
### (Declaratory Judgment Against Just4Fit)

120.    Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1 through 119, as if fully set forth herein.

121.    As described in detail above, Just4Fit did not open at least 25 Virtual Stores by July 1, 2010, as required by the VS License Agreement in order for Just4Fit to maintain an exclusive worldwide license to open Virtual Stores.

122.    Having failed to comply with the VS License Agreement's first exclusivity requirement to open at least 25 Virtual Stores by July 1, 2010, Just4Fit is not entitled under the VS License Agreement to an exclusive worldwide license to open Virtual Stores.

123.    Just4Fit is actively asserting the position in this litigation that it is entitled to an exclusive worldwide license under the VS License Agreement.

124.    An actual, substantial and immediate controversy thus exists between Aetrex and Just4Fit as to whether Just4Fit is entitled to an exclusive worldwide license for Virtual Stores under the VS License Agreement.

125.    Aetrex respectfully requests that the Court declare and adjudge that Just4Fit has failed to satisfy the VS License Agreement's requirements for maintaining an exclusive worldwide license with respect to Virtual Stores.

126.    Additionally, Article 9 of the Virtual Store License Agreement specifies (emphasis added):

> **9. TERMINATION.  This Agreement may be terminated, effective immediately,** upon written notice as follows (Termination will be without prejudice to any other remedy which may be available to a Party under applicable law):
>
> B. By Aetrex:  *** (iii). **If Licensee uses or authorizes the**

**use of the Licensed Trademarks and/or Products in a manner inconsistent with the terms and conditions of its Licensed Rights, this Agreement, disparages or otherwise places Aetrex, the Products, or Aetrex in a negative light, or uses the Licensed Trademarks and/or Products in materials, advertising or packaging not approved by Aetrex in advance in writing** or that Aetrex has disapproved  and Licensee fails to cure such breach within thirty (30) days **after receipt of written notice from Aetrex;  (iv).  If any of Licensee's representations or warranties prove materially incorrect, or are untrue or were otherwise materially misrepresented; or** (v). If **Licensee or any of its principals  is convicted in doing any crime, act of dishonesty, fraud or other act that may substantially affect the business reputation of Licensee, any of its principals, or Aetrex, as determined by Aetrex in its reasonable discretion.**

127.    Just4Fit's actions as described in detail above allows Aetrex to terminate the VS

License Agreement.  Specifically, among other things, a) Just4Fit made numerous

representations to Aetrex in order to induce Aetrex to enter into the VS License Agreement,

which representations were incorrect, untrue and/or materially misrepresented (*see, e.g.,* Counts I

and II supra); b) Danenberg, a Just4Fit principal has engaged in acts of dishonesty and fraud, and

has otherwise acted in a manner that substantially affected the business reputation of Just4Fit and

Danenberg; c) Just4Fit has acted in a manner that disparages or otherwise places Aetrex and/or

Aetrex's products in a negative light; and d) Just4Fit has used Aetrex's trademarks and products

alone, and in materials, advertising and/or packaging that has not been approved by Aetrex in

writing.

128.    Consequently, the VS Agreement is immediately terminable by Aetrex.

129.    Just4Fit is asserting in this litigation that the VS Agreement continues in full force

and effect.

130.    An actual, substantial and immediate controversy thus exists between Aetrex and Just4Fit as to whether the VS License Agreement has been terminated.

131.    Aetrex respectfully requests that the Court declare and adjudge that the VS License Agreement is terminated and null and void.

## COUNT VI
(Fraud – Against Counterclaim Defendant and All Third-Party Defendants)

132.    Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1 through 131, as if fully set forth herein.

133.    Counterclaim Defendant and each Third-Party Defendant has engaged in a scheme of deceit by knowingly misrepresenting and/or fraudulently concealing material facts, including but not limited to:  (i) their financial situation; (ii) their inability to open and operate Virtual Stores; (iii) their intent to misappropriate and co-mingle post-merger consideration earnout monies collected from Aetrex to fund this frivolous lawsuit against Aetrex in an attempt to maintain an exclusive worldwide license for Virtual Stores that is entirely unearned and unwarranted; (iv) their failure to open 25 Virtual Stores by July 1, 2010, as was required by the VS License Agreement in order to maintain an exclusive worldwide license for Virtual Stores; and (v) their attempt to preclude Aetrex from engaging in its longstanding iStep business around the world by falsely asserting that the VS License Agreement prohibits Aetrex from engaging in such a business.

134.    Counterclaim Defendant and each of the Third-Party Defendants made such material misrepresentations and/or omissions in order to induce Aetrex to continue investing in and promoting the Virtual Store concept, which Counterclaim Defendant and Third-Party Defendants knew they were incapable of supporting.

24761.5

135.    Further, Counterclaim Defendant and each of the Third-Party Defendants diverted post-merger consideration earnout payments, and raised additional funds through selling shares of Just4Fit for the sole purpose of funding this frivolous lawsuit against Aetrex, and misrepresenting to Aetrex and potential investors that Aetrex had breached the VS Licensing Agreement.

136.    Counterclaim Defendant and the Third-Party Defendants misrepresented to Aetrex that Just4Fit had opened 25 Virtual Stores in Blue Bird surf shops prior to July 1, 2010, and provided to Aetrex a falsified list of the locations of these purported Virtual Stores.

137.    Counterclaim Defendant and the Third-Party Defendants misrepresented and/or failed to disclose to Aetrex the true and correct financial situation of Just4Fit and the principals of Just4Fit, which fact if known to Just4Fit would have entitled Aetrex to terminate the VS License Agreement.

138.    Each of the aforementioned misrepresentations and/or omissions were material, and made by Counterclaim Defendant and the Third-Party Defendants knowingly and for the purpose of inducing Aetrex to act or forebear from acting.

139.    Aetrex reasonably relied upon the material misrepresentations and/or omissions of Counterclaim Defendant and the Third-Party Defendants to its detriment.  Specifically, had Aetrex been aware of the actual facts, it would have among other things:  a) terminated the VS Licensing Agreement in accordance with its terms; b) taken action to protect its intellectual property; c) taken action to protect its good name, goodwill and reputation; and d) avoided having to expend significant sums of money defending this frivolous lawsuit.

140.    Having not been able to take the above measures to protect its interests, Aetrex

has been damaged by the fraud perpetrated by Counterclaim Defendant and the Third-Party

Defendants in an amount to be determined at trial.

### COUNT VII
(Civil Conspiracy – Against Counterclaim Defendant and All Third-Party Defendants)

141.    Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1

through 140, as if fully set forth herein.

142.    Counterclaim Defendant Just4Fit and the Third-Party Defendants agreed between

and/or among themselves, to conspire and/or scheme to engage in illegal or unlawful acts, or to

engage in a lawful or legal act by unlawful or illegal means, and have taken at least one act in

furtherance thereof.

143.    An agreement and conspiracy existed to fraudulently induce Aetrex to execute the

VS License Agreement by intentionally misrepresenting the nature, intent and concept of what

the Virtual Store was to be and where Virtual Stores were to operate.

144.    Counterclaim Defendant Just4Fit, by and through its individual officers and

directors, including but not limited to, Third-Party Defendants Danenberg and/or Michalovski,

had no intention to open Virtual Stores as represented.

145.    The Counter Claimant and Third-Party Defendants conspired to place iStep

machines in Blue Bird stores, in an attempt to deceive Aetrex into believing that 25 Virtual

Stores had been opened in Blue Bird stores by July 1, 2010.

146.    Blue Bird stores are owned and/or operated by Gidi Goldfinger who is the brother

of Yair Goldfinger, a major shareholder of Just4Fit.  The placement of iSteps in Blue Bird stores,

given the relationship of the owner to Just4Fit's major shareholder establishes the lack of business motive and the creation of sham Virtual Stores.

147.    In furtherance of the conspiracy, Blue Bird distributed a letter dated July 4, 2010, in which Blue Bird fraudulently and falsely states that Virtual Stores exist in 25 of its retail locations.  Blue Bird's letter is a complete fabrication, as no Virtual Stores existed as of that date in Blue Bird stores.

148.    An agreement and conspiracy continues to exist between and among Counterclaim Defendant and the Third-Party Defendants to, among other things: a) unlawfully misrepresent and fraudulently deceive Aetrex; b) stake false claims to exclusive territory; c) unlawfully misappropriate and co-mingle post merger consideration earnout funds for improper personal and frivolous purposes; d) wrongfully place iStep machines in Blue Bird stores in an attempt to deceitfully claim Virtual Store openings; e) unlawfully raise money by deceiving and tricking investors into believing they are investing in Virtual Stores that do not really exist and to use such monies for no purpose other than personal gain and to fund the frivolous lawsuit against Aetrex; and f) to avoid undisputed evidence confirming their wrongdoing.

149.    Counterclaim Defendant and each Third-Party Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Counterclaim and Third-Party Complaint.

150.    As a direct and proximate result of the conspiracy, Aetrex was directly and materially damaged in an amount to be determined at trial, in that Aetrex was caused to lose tangible sums of money and was harmed in diverse other ways, including but not limited to

payment of earnout monies, lost profits, and suffering damage to its good name, reputation and goodwill.

## COUNT VIII
(Racketeer Influenced and Corrupt Organizations Statutes (Civil RICO) –
Against Counterclaim Defendant and all Third-Party Defendants)

151.   Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1 through 150, as if fully set forth herein.

152.   All parties involved in this lawsuit are persons within the meaning of 18 U.S.C. § 1961(3).

153.   Counterclaim Defendant and each Third-Party Defendant, collectively and/or individually, and/or including and by and through others, were, by and through their acts and omissions, an enterprise within the meaning of 18 U.S.C. § 1961(4), or otherwise constitute an association in fact enterprise within the meaning of 18 U.S.C. § 1961(4).

154.   At all relevant times, Counterclaim Defendant and the Third-Party Defendants directly, and/or through their agents, servants, workmen and employees, in their statements, conversations, among other conduct, including between other persons, engaged in activities that affected interstate trade and commerce and was organized in order to defraud Aetrex as well as others not currently parties to this lawsuit, including but not limited to their own shareholders and investors, and the general consuming public.

155.   The pattern of racketeering activities in which the Counterclaim Defendant and Third-Party Defendants engaged and conspired to engage, directly or indirectly, includes, but is not limited to, the predicate acts in violation of the Racketeer Influenced and Corrupt Organizations statutes ("RICO"), 18 U.S.C. § 1961(1)(B), § 1341 (mail fraud) and § 1343 (wire

fraud).  By way of example, but not by way of limitation, the Counterclaim Defendant and Third-Party Defendants and their enterprise used trickery and fraudulent practices and utilized the United States mails, interstate and international telephone lines, the internet, e-mail, and facsimile transmittals, which contained intentionally false statements about Virtual Store openings, the fraudulent placement of iStep machines in Blue Bird Stores, the raising of investment monies under false pretenses, and the use of post-merger earnout consideration and investment monies for purposes unrelated to the Virtual Store business, all in furtherance of their scheme to defraud.

156.    Defendants agreed and conspired to commit numerous unlawful acts, including, but not limited to, the pattern of racketeering as aforesaid, with the knowledge that this unlawful conduct was part of a pattern of racketeering activity, for the purpose of cheating, defrauding and stealing from Aetrex, as well as others not currently parties to this lawsuit, including but not limited to their own shareholders and investors, and the general consuming public, in violation of 18 U.S.C. § 1962.

157.    The intentional and unlawful actions of Counterclaim Defendant and Third-Party Defendants, upon which Aetrex detrimentally relied, has caused Aetrex to suffer damages to be determined at trial, including but not limited to a loss of capital and assets, lost business opportunities, the incurrence of unnecessary costs, expenses, and legal fees.

158.    By of example and not limitation, the aforesaid scheme to defraud specifically included Counterclaim Defendant and Third-Party Defendants collectively and/or individually fraudulently inducing Aetrex to enter into a Virtual Store License Agreement by their promises of developing an elaborate Virtual Store business, by causing Aetrex to detrimentally rely upon

their fraudulent misrepresentations, by negotiating in bad faith, by intentionally, knowingly, and falsely representing that 25 Virtual Stores were opened within the time limit required under the contract despite being advised and being invited to inspect undisputed incriminating video and other evidence to the contrary, by soliciting, accepting and misappropriating post-merger earnout consideration paid by Aetrex through iStep equipment placements, by attempting to gain exclusive rights to Virtual Stores based on falsities, by illegally raising capital from shareholders under false pretenses for no purpose other than to initiate and sponsor this frivolous lawsuit against Aetrex, to wrongfully attempt to gain territory by precluding Aetrex from its core business through its conspiracy of deceit, all to Aetrex's financial detriment and Counterclaim Defendant and Third-Party Defendants financial gain.

159.    Counterclaim Defendant and Third-Party Defendants engaged in a pattern of racketeering activity, as set forth in detail above and incorporated herein, which included numerous instances of using the mails and wires, internet and emails which were neither isolated nor sporadic, to fraudulently engage in the establishment of a Delaware corporation known as Just4Fit, fraudulent raising of funding, and misappropriating same thereby proximately causing injury to Aetrex.

160.    Counterclaim Defendant and Third-Party Defendants have committed more than two (2) predicate acts of racketeering activity, as defined by 18 U.S.C. §1 961(1), thereby constituting a pattern of racketeering activity, as defined by 18 U.S.C. § 1961(5), as evidenced by Counterclaim Defendant and Third-Party Defendants behavior.

161.    Counterclaim Defendant and Third-Party Defendants knowingly used fraudulent practices, the interstate mails and the wires, internet and emails to further that scheme from

approximately 2008 through 2010, and continue to do so including, but not limited to, engaging

in transactions that trick and deceive Aetrex, their investors, and the public into thinking that

Virtual Stores exist, when in fact they do not.

162.    Counterclaim Defendant and Third-Party Defendants knowingly conspired to

engage in each of those acts set forth in this Count, and thereby conspired to violate 18 U.S.C. §

1962(a), (b) and (c).

163.    Counterclaim Defendant and Third-Party Defendants received and/or retained

income derived, directly or indirectly, from the above pattern of racketeering activity.

Counterclaim Defendant and Third-Party Defendants used and/or invested this income, or the

proceeds from this income, in the establishment and/or operation of the Counterclaim Defendant

and Third-Party Defendants enterprise, in violation of 18 U.S.C. § 1962(a).

164.    Counterclaim Defendant and Third-Party Defendants, through the above pattern of

racketeering activity, acquired and/or maintained, directly or indirectly, an interest in or control

of the Counterclaim Defendant and Third-Party Defendant enterprise, in violation of 18 U.S.C.

§1962(b).

165.    Counterclaim Defendant and Third-Party Defendants conducted or participated,

directly or indirectly, in the conduct of the Counterclaim Defendant and Third-Party Defendants

enterprise's affairs through the above pattern of racketeering activity, in violation of 18 U.S.C.

§1962(c). Counterclaim Defendant and Third-Party Defendants in furtherance of their fraudulent

conduct, concealed the fraudulent conduct from Aetrex and it was only discovered, to some

extent, during independently verified investigation.

166.    As a direct and proximate result of the Counterclaim Defendant and Third-Party Defendants violation of 18 U.S.C. § 1962, Aetrex has sustained substantial injuries to its business and property, including but not limited to monetary damages in an amount to be determined at trial.

## COUNT IX
(Unjust Enrichment – Against Counterclaim Defendant and All Third-Party Defendants)

167.    Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1 through 166, as if fully set forth herein.

168.    By granting a license for Virtual Stores to Counterclaim Defendant, Aetrex has conferred a benefit upon Counterclaim Defendant and each of the Third-Party Defendants.

169.    As a result of the intentional, illegal, knowing, and tortious conduct, such benefits, as proven at trial, must be returned to Aetrex to prevent unjust enrichment of Counterclaim Defendant and Third-Party Defendants.

## COUNT X
(Injunction – Against Counterclaim Defendant and All Third-Party Defendants)

170.    Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1 through 169, as if fully set forth herein.

171.    As set forth in detail above, Counterclaim Defendant and Third-Party Defendants have engaged in a scheme of fraud and deceit relating to the opening of Virtual Stores and the misappropriation of merger earnout monies to support such efforts.

172.    Counterclaim Defendant and Third-Party Defendants have placed iStep machines in the alleged Virtual Store locations in such a deplorable and disparaging manner as to be damaging to Aetrex's good name, goodwill and reputation.  In addition, Counterclaim Defendant

24761.5

48

and Third-Party Defendants' failure to seek pre-approval from Aetrex for their exploitation of Aetrex's trademarks and other intellectual property, as is required under the VS License Agreement, has resulted in Aetrex's name and products being displayed in a bad light.

173.    With respect to these issues, Aetrex does not have an adequate remedy at law.

174.    Accordingly, Aetrex is entitled to an injunction directing Counterclaim Defendant and all Third-Party Defendants to: a) immediately remove any and all materials bearing Aetrex's name or other intellectual property, any and all of Aetrex's products, and any and all iStep or similar machines from any and all alleged Virtual Store or other locations; b) immediately return all such materials to Aetrex; and c) immediately cease selling, using or otherwise exploiting any Aetrex products, intellectual property or other property or materials.

## COUNT XI
(Pierce Corporate Veil/Alter Ego Liability –
Against Third-Party Defendants Danenberg and Michalovski)

175.    Aetrex repeats and realleges each and every allegation set forth in Paragraphs 1 through 174, as if fully set forth herein.

176.    Upon information and belief, Danenberg and Michalovski have engaged in a pervasive disregard of corporate formalities with respect to Just4Fit and Just4Fit Israel and have so completely dominated and/or exercised such a high degree of control over Just4Fit and Just4Fit Israel that this Court should pierce the corporate veil of Just4Fit and Just4Fit Israel and/or find that Just4Fit and Just4Fit Israel is the mere alter ego of Danenberg and Michalovski.

177.    Upon information and belief, Just4Fit and Just4Fit Israel were created for the purpose of defrauding Aetrex and the public, unlawfully cheating investors who believed that Just4Fit and/or Just4Fit Israel had opened and were continuing to open Virtual Stores that in

reality did not exist.  In fact, Danenberg and Michalovski had no intention of opening or operating any Virtual Stores.

178.    Upon information and belief, Danenberg and Michalovski used the corporate form of Just4Fit and/or Just4Fit Israel as a mere instrumentality and vehicle by which to engage in the intentional, knowing, unlawful and wrongful conduct described above, and to attempt to shield themselves from personal liability.

179.    From its founding, Just4Fit's business plan, by and through Danenberg and Michalovski, has been to obtain Virtual Store license rights without actually opening any Virtual Stores, to collect post merger earnout consideration to try and cover up its web of deceit, and to file a frivolous suit against the Aetrex.

180.    The wrongful and unlawful conduct that is at the heart of this lawsuit has been a key component of Danenberg and Michalovski's business plan and strategy from the time of the merger between Aetrex and Fitracks.

181.    Just4Fit and Just4Fit Israel are simply arms and mere instrumentalities of Danenberg and Michalovski, and are being operated out of Danenberg and Michalovski's common offices in Israel, for the purpose of engaging in the illegal and wrongdoing noted herein.

182.    Danenberg and Michalovski personally dominate and control the operations of Just4Fit and Just4Fit Israel.  On information and belief, Danenberg and Michalovski failed to maintain or respect the independent legal identities of their companies.  Instead, they used them as shells to carry out their own personal business and motives.

183.    On information and belief, Danenberg and Michalovski did not maintain separate corporate books and records for Just4Fit and Just4Fit Israel, and the entities were either

undercapitalized or worthless. To the extent that the companies employed any officers or directors, such officers and directors overlapped and served solely at the discretion of Danenberg and/or Michalovski. Thus, Just4Fit and/or Just4Fit Israel are rendered a separate entity in name only.

184.  It would be manifestly unfair and unjust to allow Danenberg and Michalovski to misuse the corporate firms of Just4Fit and Just4Fit Israel for their own personal profit while, at the same time, using them to keep assets beyond the reach of those whom they have defrauded and injured.

185.  Danenberg and Michalovski purported to act in the name of Just4Fit and Just4Fit Israel, when they in fact acted in their individual capacities for their own individual benefit.

186.  Accordingly, Aetrex is entitled to pierce their corporate veils and hold Danenberg and Michalovski personally liable as they are individually liable for the acts, omissions, debts and liabilities of Just4Fit and Just4Fit Israel, including the debts and liabilities owed by Just4Fit and Just4Fit Israel to Aetrex.

WHEREFORE, Aetrex requests that judgment be entered against the Counterclaim Defendant and each Third-Party Defendant, individually, jointly, and/or severally, as follows:

A.  With respect to Count I, rescission of the VS License Agreement, punitive damages, costs of suit, reasonable attorneys' fees, and such other relief as the Court deems just and proper;

B.  With respect to Count II, rescission of the VS License Agreement, punitive damages, costs of suit, reasonable attorneys' fees, and such other relief as the Court deems just and proper;

C.     With respect to Count III, damages against Just4Fit in an amount to be determined at trial, costs of suit, reasonable attorneys' fees, and such other relief as the Court deems just and proper;

D.     With respect to Count IV, damages against Just4Fit in an amount to be determined at trial, costs of suit, reasonable attorneys' fees, and such other relief as the Court deems just and proper;

E.     With respect to Count V, a declaration that Just4Fit has failed to satisfy the VS License Agreement's requirements to maintain a worldwide exclusive license for Virtual Stores and a declaration that the VS License Agreement is terminated, costs of suit, reasonable attorneys' fees and such other relief as the Court deems just and proper;

F.     With respect to Count VI, damages against Counterclaim Defendant and each Third-Party Defendant in an amount to be determined at trial, punitive damages, costs of suit, reasonable attorneys' fees, and such other relief as the Court deems just and proper;

G.     With respect to Count VII, damages against Counterclaim Defendant and each Third-Party Defendant in an amount to be determined at trial, punitive damages, costs of suit, reasonable attorneys' fees, and such other relief as the Court deems just and proper;

H.     With respect to Count VIII, damages against Counterclaim Defendant and each Third-Party Defendant in an amount to be determined at trial, punitive damages, costs of suit, reasonable attorneys' fees, and such other relief as the Court deems just and proper;

I.     With respect to Count IX, damages against Counterclaim Defendant and each Third-Party Defendant in an amount to be determined at trial, punitive damages, costs of suit, reasonable attorneys' fees, and such other relief as the Court deems just and proper;

24761.5

J.      With respect to Count X, an injunction directing Counterclaim Defendant and all

Third-Party Defendants to: a) immediately remove and all materials bearing Aetrex's name or

other intellectual property, any and all of Aetrex's products, and any and all iStep or similar

machines from any and all alleged Virtual Store or other public locations; b) immediately return

all such materials to Aetrex; and c) immediately cease selling, using or otherwise exploiting any

Aetrex products, intellectual property or other property or materials, together with costs of suit,

reasonable attorneys' fees and such other relief as the Court deems just and proper;

K.      With respect to Count XI, a finding that Third-Party Defendants Danenberg and

Michalovski are personally liable for any judgment entered against Just4Fit, Just4Fit Israel and/or

Mavidex Ltd. d/b/a Blue Bird Surf & Urban, together with costs of suit, reasonable attorneys'

fees and such other relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ William E. Manning
    William E. Manning (DE No. 697)
    James D. Taylor, Jr. (DE No. 4009)
    SAUL EWING LLP
    222 Delaware Avenue
    P.O. Box 1266
    Wilmington, DE 19899
    Telephone:    302 421-6800
    Facsimile:    302 421-6813

    Michael S. Gugig
    SAUL EWING LLP
    1 Riverfront Plaza, Suite 1520
    Newark, New Jersey 07102
    Telephone:    973-286-6700
    Facsimile:    973-286-6800

    Counsel for Defendant/Counterclaim
    Plaintiff/Third-Party Plaintiff
    Aetrex Worldwide, Inc.

Dated: November 1, 2010

24761.5