## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIG INVESTMENTS LLC, | : | |
| Plaintiff, | : | |
| | : | C.A. No. 11-00039-LPS |
| v. | : | |
| | : | |
| AETREX WORLDWIDE, INC., | : | |
| Defendant | : | |

| | | |
|---|---|---|
| | : | |
| JUST4FIT, INC. | : | |
| Plaintiff/Counterclaim Defendant, | : | |
| | : | |
| v. | : | C.A. No. 10-00905-LPS |
| | : | |
| AETREX WORLDWIDE, INC., | : | |
| Defendant/Counterclaim Plaintiff/ | : | |
| Third Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NOAM DANENBERG, JUST4FIT ISRAEL, | : | |
| LTD.; MAVIDEX LTD d/b/a BLUE BIRD | : | |
| SURF AND URBAN; OFER MICHALOVSKI; | : | |
| JOHN and/or JANE DOES 1-25; ABC, | : | |
| CORPORATIONS 1-25, | : | |
| Third Party Defendants. | : | |

Edmond D. Johnson, James G. McMillan, III, PEPPER HAMILTON LLP, Wilmington, DE.

> Attorneys for Plaintiff MIG Investments LLC; Plaintiff/Counterclaim Defendant Just4Fit, Inc., and Third Party Defendants Just4Fit Israel, Ltd., Marvidex Ltd., Noam Danenberg, and Ofer Michalovski.

William E. Manning, James D. Taylor, Jr., SAUL EWING, LLP, Wilmington, DE; Michael S. Gugig, SAUL EWING LLP, Newark, NJ.

> Attorneys for Defendant/Counterclaim Plaintiff/Third Party Plaintiff Aetrex Worldwide, Inc.

## MEMORANDUM OPINION

March 30, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are: (1) a Motion to Dismiss, or alternatively, to Strike the

Third Party Complaint (D.I. 16),[1] filed by putative third party defendants Noam Danenberg,

Just4Fit Israel, Ltd., Mavidex Ltd. d/b/a Blue Bird Surf & Urban, and Ofer Michalovski

(collectively, "TP Defendants"); and (2) a Motion to Consolidate Cases (D.I. 22), filed by

Defendant/Counterclaim Plaintiff/Third Party Plaintiff Aetrex Worldwide, Inc. ("Aetrex"). For

the reasons discussed below, the Court will grant in part and deny in part TP Defendants' Motion

to Dismiss and grant Aetrex's Motion to Consolidate.

## I.    BACKGROUND[2]

### A.    The Parties

Plaintiff/Counterclaim Defendant Just4Fit, Inc. ("Just4Fit") is a Delaware corporation

with its principal place of business in Israel. (D.I. 3 at ¶ 3) TP Defendant Just4Fit Israel, Ltd.

("Just4Fit Israel") is an Israeli corporation with its principal place of business in Israel. (*Id.*)

Just4Fit Israel is wholly-owned by Just4Fit, and the two corporations share directors and officers.

(*Id.*) Just4Fit Israel transacts business in Israel and has never done business in the United States.

(D.I. 18 at A163)

Plaintiff MIG Investments LLC ("MIG")[3] is a Delaware limited liability company that

---

[1]Unless otherwise noted, all citations to the docket refer to Civil Action No. 10-00905.

[2]On a motion to dismiss, the Court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994).

[3]MIG was formerly known as "MIG Holdings LLC," but changed its name on August 23, 2010. (*See* C.A. No. 11-00039, D.I. 1 Ex. 1 at ¶ 13)

represents the former stockholders of Fitracks, Inc. ("Fitracks"). (C.A. No. 11-00039, D.I. 1 Ex. 1 at ¶ 12)

Defendant Aetrex is a New Jersey corporation with its principal place of business in Teaneck, New Jersey. (D.I. 3 at ¶ 1)

TP Defendant Noam Danenberg ("Danenberg") is an Israeli citizen. (D.I. 3 at ¶ 2) Danenberg is the controlling shareholder, director, and President of Just4Fit and is also a director of Just4Fit Israel. (*Id.*; D.I. 18 at 161)

TP Defendant Ofer Michalovski ("Michalovski") is an Israeli citizen. (D.I. 18 at A159) He is Vice President of Just4Fit and a consultant for Just4Fit Israel. (*Id.*; D.I. 3 at ¶ 5) Acting in his role as Vice President of Just4Fit, he signed Just4Fit's verification of the factual allegations in the complaint. (D.I. 18 at A159)

TP Defendant Mavidex Ltd. d/b/a Blue Bird Surf & Urban ("Blue Bird") is a business entity organized and existing under the laws of Israel, with its principal place of business in Israel. (D.I. 3 at ¶ 6)

**B.**   *Aetrex I*[4]

This case arises out of a merger between a Delaware corporation, Fitracks, and a subsidiary of Aetrex. (D.I. 17 at 1) Fitracks developed, manufactured, and patented computerized foot measuring devices – iStep machines – that Aetrex used in its business of making and selling orthotic devices. (*Id.*) In 2008, the stockholders of Fitracks agreed to sell Fitracks to Aetrex in return for, among other things, a contingent exclusive worldwide license to use the iStep machines in a market segment defined in the merger agreement as "Virtual Stores."

---

[4] *Aetrex I* refers to *Just4Fit, Inc. v. Aetrex Worldwide, Inc.*, C.A. No. 10-00905.

2

(D.I. 3 Ex. C and, hereinafter, "Merger Agreement") The Merger Agreement defined a Virtual

Store as:

> a non-shoe store environment (such as a booth, stall or kiosk) at a
> fixed site, situated in a location other than at a shopping mall or
> shopping center in North America containing an existing iStep
> customer (unless Parent agrees otherwise in writing), which
> contains single or multiple foot-measuring devices and is intended
> to function as a promoter and direct seller of customized footwear
> products, including, without limitation, insoles and shoes, but
> which shall carry no inventory of shoes and which shall occupy a
> space of not more than 150 square feet.

(*Id.* at § 1.01)

The Merger Agreement was entered into on May 15, 2008. (*Id.*) Under § 6.01 of the

Merger Agreement, Fitracks's stockholders had the option to form Newco in order to effectuate

the merger and operate Virtual Stores.[5] Pursuant to § 6.03(e) of the Merger Agreement:

---

[5]Specifically, under § 6.03(a) of the Merger Agreement:

> Prior to the Closing Date, all or some of the Equity Holders may
> form a new legal entity beneficially owned by such Equity Holders
> ("Newco") which entity shall be created for the express purpose of
> marketing and selling Parent's and any Parent Subsidiary's
> (including the Company's) products through Virtual Stores.
> Subject to Section 2.11(c) and Section 6.03(h) of this Agreement,
> Newco shall be granted a worldwide exclusive license (the "Newco
> License") pursuant to a license agreement in a form to be agreed
> upon by Parent and Newco as a result of good faith negotiations
> prior to the Closing (the "Newco License Agreement"), to operate
> Virtual Stores and to market and sell Parent's and any Parent
> Subsidiary's (including the Company's) products through such
> Virtual Stores. So long as such Newco License remains in effect,
> Parent shall be the exclusive supplier of all foot-measuring
> technology products and all insoles, orthotics, socks and other foot-
> care products offered by Newco in and through Virtual Stores.

(D.I. 3 Ex. C at § 6.03(a))

> [I]f the Equity Holders have not formed Newco and established
> Newco as a viable licensee of Parent and Parent's Subsidiaries
> (including the Company) to operate Virtual Stores by 180 days
> after the Closing Date, Parent and Parent's Subsidiaries shall be
> required to grant Newco only a non-exclusive license pursuant to
> the Newco Licensing Agreement.

(*Id.* at § 6.03(e)) In order to obtain the exclusive license, Fitracks's stockholders formed a

Newco called Just4Fit. Upon forming Just4Fit, Aetrex was obligated to negotiate a license

agreement with Just4Fit that memorialized the terms of the license required by the Merger

Agreement. (D.I. 1 Ex. 1 Part 4 at 29-39 and, hereinafter, the "VLA") The VLA was entered

into on November 28, 2008. (*Id.* at 29) Pursuant to the VLA, Just4Fit obtained an exclusive

worldwide license to operate the Virtual Stores. (*Id.* at ¶ 2) The VLA defined a Virtual Store as:

> [A] non-shoe store environment (such as a booth, stall or kiosk) at
> a fixed site, situated in a location other than at a shopping mall or
> shopping center in North America containing an existing iStep
> customer (unless Aetrex agrees otherwise in writing), which
> contains single or multiple foot-measuring devices and is intended
> to function as a promoter and direct seller of customized footwear
> products, including, without limitation, insoles and shoes, and
> which shall occupy a space of not more than 150 square feet.
> Additionally, the Virtual Stores shall be permitted to carry a
> limited fitting inventory in amounts as mutually agreed upon
> between the Parties in writing from time to time.

(*Id.* at ¶ 2(a)) However, Just4Fit would lose this exclusive license if it did not establish at least

twenty-five Virtual Stores by July 1, 2010. (D.I. 3 at ¶ 43)

Prior to the July 1, 2010 deadline, Danenberg made numerous representations indicating

that Just4Fit was going to meet the deadline. (*See id.* at ¶¶ 55, 58) On June 3, 2010, Danenberg

emailed Aetrex and advised that he was "opening 25 Virtual Stores during the month of June."

(*Id.* at ¶ 55; *id.* Ex. E) Then, on June 29, 2010, Danenberg sent an email to Just4Fit's

4

stockholders and stated that Just4Fit "intends to meet its contractual obligations and open 25 Virtual Stores before July 1, 2010." (*Id.* Ex. G) On July 5, 2010, Danenberg informed Aetrex via email that he had opened twenty-five Virtual Stores prior to the deadline. (*Id.* at ¶ 59; *id.* Ex. H) Danenberg's email contained a letter from Blue Bird indicating that Blue Bird had the Virtual Stores in its retail locations. (*Id.* at ¶ 60; *id.* Ex. H) Aetrex claims that Danenberg never opened any Virtual Stores. (*Id.* at ¶ 63)

## 2. *Aetrex II*[6]

*Aetrex II* arises out of Aetrex's alleged failure to pay MIG post-merger payments (the "Earnout") pursuant to the requirements of the Merger Agreement. (C.A. No. 11-00039, D.I. 10 at 1) The Merger Agreement provided that consideration to be paid to the Fitracks's stockholders would be bifurcated, consisting of a base payment and the Earnout. (C.A. No. 11-00039, D.I. 1 Ex. 1 at ¶ 12) The base payment was due on the closing date of the merger. (*Id.* at ¶ 15) The Earnout was to be paid to the stockholders and holders of options or warrants in Fitracks over a period of ten years following the closing date of the merger. (*Id.* at ¶ 16) Section 6.01 of the Merger Agreement sets forth the specific terms of the Earnout payment. (*See* D.I. 3 Ex. C at § 6.01) Specifically, § 6.01(a) of the Merger Agreement provides:

> For a period of ten (10) years following the Closing Date (the "Earnout Term"), Parent shall pay Paying Agent, for the benefit of the Equity Holders (in the aggregate) and in proportion to each Equity Holder's interest in the Closing Equivalent Shares prior to the Effective Time, an earnout . . . on account of each computerized foot measuring system (the "System") that Parent (and/or any Parent Subsidiary in which Parent's ownership interest exceeds ten percent (10%)) sells or places with a customer (with or without consideration) in the amount of (i) USD $500 per System

---

[6]*Aetrex II* refers to *MIG Investments LLC v. Aetrex Worldwide, Inc.*, C.A. No. 11-00039.

> . . . and (ii) USD $300 per System for each System sold or placed at any Major Retailer location. Notwithstanding anything herein to the contrary, the following transactions shall be specifically excluded from the Earnout: (i) any Systems sold or placed at any Virtual Store . . . .

(*Id.* at § 6.01(a)) In the spring of 2010, MIG discovered that some of the Earnout payments failed to account for all iStep machines placed by Aetrex during the relevant quarter. (C.A. No. 11-00039, D.I. 1 Ex. 1 at ¶ 28) Specifically, the Earnout payments did not account for the iStep machines placed by Just4Fit Israel. (*Id.* at ¶ 29) Aetrex has also failed to provide Earnout reports to MIG since the closing date, as required by the Merger Agreement. (*Id.* at ¶ 34)

## C. Procedural History

Just4Fit filed its breach of contract action against Aetrex – seeking declaratory relief, specific performance, damages, and injunctive relief – on September 21, 2010, in the Delaware Court of Chancery. (D.I. 1 Ex. 1) On October 1, 2010, Aetrex removed *Aetrex I* to federal court, pursuant to 28 U.S.C. § 1441. (D.I. 1)

Subsequently, on November 1, 2010, Aetrex filed a "Verified Answer, Defenses, Counterclaims, and Third Party Complaint." (D.I. 3 and, hereinafter, "TP Complaint") In its TP Complaint, Aetrex asserts counterclaims of fraud, misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing against Just4Fit. (*Id.*) Aetrex also asserts claims of fraud, civil conspiracy, unjust enrichment, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, against Just4Fit and TP Defendants.[7] (*Id.*)

---

[7]On the eve of the motions hearing, Aetrex advised the Court it would be voluntarily dismissing its RICO claims. (D.I. 38) Subsequently, the Court entered an Order dismissing the RICO claims. (D.I. 40)

On February 7, 2011, the TP Defendants filed a Motion to Dismiss the TP Complaint, pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that this Court lacks personal jurisdiction over them and that the TP Complaint fails to state a claim upon which relief can be granted. (D.I. 16) Alternatively, the TP Defendants request that the Court strike the TP Complaint on the ground that TP Defendants are not proper defendants. (*Id.*)

In *Aetrex II*, MIG filed a complaint alleging breach of contract and seeking specific performance on December 9, 2010. (C.A. No. 11-00039, D.I. 1 Ex. 1) *Aetrex II* was removed from the Delaware Court of Chancery to this Court on January 11, 2011. (C.A. No. 11-00039, D.I. 1)

On March 18, 2011, Aetrex filed a Motion to Consolidate *Aetrex I* and *Aetrex II*. (D.I. 22) Just4Fit and MIG filed briefs in opposition to the Motion to Consolidate. (*See* D.I. 26; C.A. No. 11-00039, D.I. 10)

Briefing on all motions was completed on April 14, 2011. (*See* D.I. 27) The Court held oral argument on the motions on October 12, 2011. (*See* Transcript of October 12, 2011 hearing (D.I. 41) (hereinafter "Tr."))

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss Pursuant to Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) directs the Court to dismiss a case when it lacks personal jurisdiction over the defendant. Determining the existence of personal jurisdiction requires a two-part analysis. First, the Court analyzes the long-arm statute of the state in which the Court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

Next, the Court must determine whether exercising jurisdiction over the defendant in this state comports with the Due Process Clause of the Constitution. *See id.* Due Process is satisfied if the Court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, by a preponderance of the evidence and with reasonable particularity, the existence of sufficient minimum contacts between the defendant and the forum to support jurisdiction. *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share,* 735 F.2d at 67 n.9; *see also Philips Elec. N. Am. Corp. v. Contec Corp.*, 2004 WL 503602, at *3 (D. Del. Mar. 11, 2004) ("After discovery has begun, the plaintiff must sustain [its] burden by establishing jurisdictional facts through sworn affidavits or other competent evidence.").

If no evidentiary hearing has been held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Conner v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken

8

as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d

93, 97 (3d Cir. 2004). A court is always free to revisit the issue of personal jurisdiction if it later

is revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v.*

*Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009).

## B.   Motion to Dismiss Pursuant to Rule 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires

the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372

F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat*

*Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted).

Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded

allegations in the complaint as true, and viewing them in the light most favorable to plaintiff,

plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000)

(internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a

right to relief above the speculative level on the assumption that the allegations in the complaint

are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While heightened fact pleading

is not required, "enough facts to state a claim to relief that is plausible on its face" must be

alleged. *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009). At

bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal quotation marks omitted). Nor is the Court obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## C.    Motion to Consolidate

Pursuant to Federal Rule of Civil Procedure 42(a), the Court may consolidate actions "involving a common question of law or fact" and "may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." *See also Oracle Corp. v. epicRealm Licensing, LP.*, 2007 WL 901543, at *5 (D. Del. Mar. 26, 2007). "Decisions to consolidate cases are discretionary, but often courts balance considerations of efficiency, expenses, and fairness." *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2007 WL 2892707, at *3 (D. Del. Sept. 30, 2007). A court has "broad power . . . to consolidate causes for trial as may facilitate the administration of justice." *Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964).

10

## III. DISCUSSION

### A. Personal Jurisdiction

Aetrex bears the burden of adducing facts which, at a minimum, "establish with

reasonable particularity" that personal jurisdiction exists over TP Defendants. *See Provident*

*Nat'l Bank*, 819 F.2d at 437. Aetrex asserts two bases for exercising personal jurisdiction over

TP Defendants. First, Aetrex relies on the Delaware long-arm statute, 10 Del. C. § 3104(c).

(D.I. 21 at 4) Alternatively, Aetrex relies on the conspiracy theory of personal jurisdiction. (*Id.*)

### 1. Personal Jurisdiction Over Individual TP Defendants Under the Delaware Long-Arm Statute

First, the Court will address whether jurisdiction exists under Delaware's long-arm statute

with respect to each individual TP Defendant based on each such Defendant's contacts with the

forum state.[8]

---

[8]The Court is not persuaded by any of Aetrex's arguments that apply generally to all of the TP Defendants. First, Aetrex asserts that personal jurisdiction over all individual TP Defendants exists by virtue of "each being an owner, director and/or officer of a corporate entity organized under the laws of the State of Delaware." (D.I. 3 at ¶ 13) However, being an officer or director of a Delaware corporation only supports jurisdiction for claims by stockholders for breaches of fiduciary duties. *See Resource Ventures, Inc. v. Resources Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 433 n.4 (D. Del. 1999); *see also Shaffer v. Heitner*, 433 U.S. 186, 215-16 (1977) (accepting position as officer or director of Delaware corporation does not in and of itself support exercise of personal jurisdiction). Also, merely owning stock in a Delaware corporation is not a sufficient basis for exercising personal jurisdiction. *See Shaffer*, 433 U.S. at 186.

Next, Aetrex asserts that personal jurisdiction is proper because the TP Defendants provided money to fund this lawsuit and, as a result, have availed themselves of the protections of Delaware law. (D.I. 3 at ¶ 14) But stockholders always, in effect, provide money to support the efforts of corporations, including the corporations' involvement in litigation, and mere stock ownership, as noted, is not sufficient to establish personal jurisdiction.

Finally, Aetrex argues that registration of the domain name "Just4Fit.com" confers jurisdiction because this website contained false and misleading information, so as to perpetrate fraud within the state. (D.I. 3 at ¶ 13) However, mere registration of a domain name and

### a.  **Danenberg**

Aetrex asserts that Danenberg is subject to personal jurisdiction in Delaware under the

Delaware long-arm statute, 10 Del. C. § 3104(c).  Section 3104(c) "provide[s] for specific

jurisdiction, under which the cause of action must arise from the contacts with the forum."

*Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991).  "A single

act of incorporation in Delaware will suffice to confer personal jurisdiction over a nonresident

defendant if such purposeful activity in Delaware is an integral component of the total transaction

to which plaintiff's cause of action relates." *Shamrock Holdings of Cal., Inc. v. Arenson*, 421 F.

Supp. 2d 800, 804 (D. Del. 2006).

Aetrex asserts that the incorporation of Just4Fit in connection with the merger and the

VLA is a sufficient act to confer jurisdiction on Danenberg because the causes of action at issue

in this lawsuit arise from and relate to the formation of Just4Fit as part of the VLA.  (D.I. 21 at 8)

The Court agrees with Aetrex that Danenberg's participation in the incorporation of Just4Fit is

sufficient to confer jurisdiction under § 3104(c).[9] *See Shamrock*, 421 F. Supp. 2d at 804

---

enabling viewers to access the website from within a forum state do not demonstrate that defendants directed their activity towards the forum state such that the exercise of personal jurisdiction is warranted. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 264 (3d Cir. 2008) (noting that mere registration of domain name and creation of website that uses another party's trademark does "not constitute an intentional act aimed at the forum state for jurisdictional purposes"); *Desktop Techs., Inc. v. Colorworks Reprod. & Design, Inc.*, 1999 WL 98572, at *5 (W.D. Pa. Feb. 25, 1999) (opining that "publication of a page on the web, without more, is not an act by which a party purposefully avails itself of the privilege of conducting business in the forum state").

[9]The TP Defendants' reliance on *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 975 (Del. Ch. 2000), is misplaced because there the agreement at issue was not governed by Delaware law.  Here, by contrast, the VLA is governed by Delaware law. (*See* D.I. 3 Ex. 1 at 56-57 § 10.05)

(concluding jurisdiction was appropriate under § 3104(c) where Israeli citizen incorporated corporation in Delaware and cause of action arose out of and related to act of incorporation); *see also Sample v. Morgan*, 935 A.2d 1046, 1057 (Del. Ch. 2007) ("The involvement of a defendant in arranging . . . for the filing of a corporate instrument in Delaware that facilitated transactions under challenge in litigation in this court has been repeatedly recognized as sufficient to constitute the transaction of business under § 3104(c).").

Danenberg has purposefully availed himself of the laws of Delaware through his involvement in the Aetrex/Fitracks merger and subsequent incorporation of Just4Fit in Delaware. It was through the Delaware corporation, Just4Fit, that Danenberg made some of the allegedly false statements that gave rise to this cause of action. (*See* D.I. 3 at ¶ 58 (alleging Danenberg sent email to Just4Fit stockholders indicating that it would meet contractual obligations); *id.* at ¶ 32 (alleging that false and misleading statements appeared on just4fit.com)) Additionally, Just4Fit was incorporated with the express purpose of opening Virtual Stores, the very issue at the heart of this dispute. Indeed, under the Merger Agreement, the former shareholders of Fitracks were obligated to create a new corporate entity if they wished to take advantage of the exclusive worldwide Virtual Store License, and Just4Fit is that corporation. (*See* Tr. at 58-59 (counsel for Aetrex agreeing that Step 1 of Merger Agreement was that "the owners of Fitracks had an option to form Newco; if they did form that Newco, then they could operate the virtual stores"); (D.I. 3 Ex. C at § 6.01)) Thus, the Court has personal jurisdiction over Danenberg under 10 Del. C. § 3104(c).

Having concluded that Plaintiff has sufficiently alleged personal jurisdiction over Danenberg to satisfy the Delaware long-arm statute, the Court must next determine whether

13

assertion of jurisdiction comports with federal due process. "Due process requires that sufficient minimum contacts exist between the defendant and the forum state to satisfy traditional notions of fair play and substantial justice." *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 821 F. Supp. 272, 275 (D. Del. 1993) (internal quotation marks omitted). The exercise of specific jurisdiction comports with due process when: (1) the defendant has purposefully directed its activities at residents of the forum state and (2) the alleged injuries arise out of those activities. *See id.* at 275-76 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

As discussed above, Danenberg has purposefully directed his activities at Delaware through the incorporation of Just4Fit as a Delaware corporation. The alleged injuries in this case arise from the formation of Just4Fit and the allegedly fraudulent activities of Just4Fit. Thus, the exercise of personal jurisdiction over Danenberg comports with federal due process. Accordingly, the Court has personal jurisdiction over Danenberg.

### b. **Michalovski**

Aetrex asserts that the Court has jurisdiction over Michalovski because he has caused "tortious injury in the State by an act or omission in this State." 10 Del. C. § 3104(c)(3). Michalovski's single act that occurred in Delaware (outside of the alleged conspiracy theory-related acts, discussed in the next section below) was his verification of a complaint filed in a Delaware court.

Although a single act can support the exercise of personal jurisdiction under § 3104(c)(3), the Court concludes that Michalovski's single of act of verifying the complaint is insufficient to confer personal jurisdiction. Aetrex relies on *Mobil Oil Corp. v. Advanced Env't Recycling Techs.*, 833 F. Supp. 437, 444 (D. Del. 1993). However, in *Mobil* the court exercised jurisdiction

14

over a corporate officer who had given direct authorization for the filing of the lawsuit. *See id.* at 444. Also in *Mobil*, the court held the exercise of personal jurisdiction was not appropriate with respect to an employee whose sole contact with the forum was filing an affidavit. *See id.* at 445. Here, Michalovski merely signed the verification and did not affirmatively give authorization for the filing of the lawsuit. His situation is more analogous to that of the employee in *Mobil*. Accordingly, the Court concludes that Aetrex has not made out a prima facie case of personal jurisdiction with respect to Michalovski under the Delaware long-arm statute.

### c. Just4Fit Israel

Aetrex asserts that the Court has personal jurisdiction over Just4Fit Israel under either the alter ego theory or the agency theory of personal jurisdiction. (D.I. 21 at 14) These are two theories under which Delaware law may permit a court to exercise personal jurisdiction over a foreign parent corporation for the acts of its subsidiary. *See E.I. duPont de Nemours & Co. v. Rhodia Fiber & Resin Intermediaries, S.A.S.*, 197 F.R.D. 112, 122 (D. Del. 2000). Therefore, in applying Delaware's long-arm statute to a parent entity, the Court "may consider the acts of an agent to the extent that those actions were directed and controlled by the principal." *Applied Biosystems*, 772 F. Supp. at 1465-66.

Here, Just4Fit, a Delaware corporation, is the parent of Just4Fit Israel, an Israeli corporation. Neither the alter ego nor agency theories of personal jurisdiction necessarily renders the jurisdictional contacts of the parent-principal, Just4Fit, also applicable to the subsidiary-agent, Just4Fit Israel. Thus, the Court concludes it cannot exercise personal jurisdiction over Just4Fit Israel under the alter ego theory or agency theory.

15

### d.    Blue Bird

Aetrex asserts that the Court should exercise jurisdiction over Blue Bird because Blue Bird committed a tort that caused an effect in Delaware. (D.I. 21 at 16)  Specifically, in the TP Complaint, Aetrex alleges that Blue Bird prepared a letter on July 4, 2010 falsely stating that twenty-five purported Virtual Stores had been opened in Blue Bird locations prior to July 1, 2010. (D.I. 3 at ¶ 147)  Even assuming that this letter had an effect in Delaware, Blue Bird is still not subject to the Court's jurisdiction.  Personal jurisdiction may be exercised over a person who causes tortious injury within Delaware "by an act or omission outside of the State [only] if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State." 10 Del. C. § 3104(c)(4).  Aetrex has failed to allege that Blue Bird has the requisite contact with Delaware.  Indeed, Blue Bird has signed a sworn affidavit indicating that it has no contacts with Delaware.  (*See* D.I. 18 at A165)  Therefore, Aetrex has failed to make out a prima facie case that the Court has personal jurisdiction over Blue Bird under the Delaware long-arm statute.

### 2.    Conspiracy Theory of Personal Jurisdiction

Having determined that the Court does not have personal jurisdiction under the Delaware long-arm statute over TP Defendants Michalovski, Just4Fit Israel, and Blue Bird, the Court will now address whether, alternatively, it can exercise personal jurisdiction over Michalovski, Just4Fit Israel, and Blue Bird under the conspiracy theory of personal jurisdiction.

Delaware recognizes the conspiracy theory of personal jurisdiction. *See Instituto Bancario Italiano SpA v. Hunter Eng'g, Co.*, 449 A.2d 210, 225 (Del. 1982). "The conspiracy theory subjects a conspirator who is absent from the forum to the jurisdiction of the court if five

16

requirements are met." *G&G LLC v. White*, 535 F. Supp. 2d 452, 464 (D. Del 2008).

Specifically, the plaintiff must show that:

> (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*Id.* "Delaware courts construe this test narrowly and require a plaintiff to assert specific facts, not conclusory allegations, as to each element." *Hartsel v. Vanguard Grp., Inc.*, 2011 WL 2421003, at *10 (Del. Ch. June 15, 2011); *see also Computer People, Inc v. Best Int'l Grp., Inc.*, 1999 WL 288119, at *6 (Del. Ch. Apr. 27, 1999) (opining that if conspiracy theory is not strictly construed it could "become a facile way for a plaintiff to circumvent the minimum contacts requirement of *International Shoe Co. v. Washington*").

The TP Complaint contains two separate allegations of conspiracy: (1) that there was "an agreement and conspiracy . . . to fraudulently induce Aetrex to execute the VLA" (D.I. 3 at ¶ 143) and (2) that the TP Defendants and Just4Fit "conspired to place iStep machines in Blue Bird stores, in an attempt to deceive Aetrex into believing that 25 Virtual Stores had been opened in Blue Bird stores by July 1, 2010." (*Id.* at ¶ 145) The Court will address each of these allegations in turn.

## a. **Conspiracy to Induce Aetrex to Execute VLA**[10]

The first allegation of conspiracy, relating to TP Defendants' alleged inducement of

Aetrex to execute the VLA, is insufficient to support the exercise of personal jurisdiction because

it fails to meet the first prong of the conspiracy theory of personal jurisdiction: that a conspiracy

to defraud exists. In order to satisfy this requirement, Aetrex "must allege the following

elements: (1) two or more persons; (2) some object to be accomplished; (3) a meeting of the

minds between or among such persons relating to the object or course of action; (4) one or more

unlawful acts; and (5) resulting proximate damages." *Hartsel*, 2011 WL 2421003, at *10.

Aetrex's allegation of conspiracy fails because there could not have been a meeting of the minds

among the TP Defendants as to the formation of the VLA. Specifically, the TP Defendants, with

the exception of Danenberg, were not involved with Just4Fit at or around November 28, 2008,

when the VLA was entered into. (*See* D.I. 18, Part 4 at A159 (Michalovski stating that he first

met Danenberg in June 2009 and that "[b]efore 2010, [he] did not do any business with Just4Fit,

Inc. or Just4Fit Israel, Ltd."); *id.* at A165 (Blue Bird stating "[b]efore 2010, [Blue Bird] did not

do any business with Noam Danenberg, Just4Fit, Inc. or Just4Fit Israel, Ltd.")) Additionally,

there is no allegation in the TP Complaint or evidence presented that Michalovski or Blue Bird

had any dealings with Danenberg prior to their involvement with Just4Fit in 2010. Thus, it is

---

[10]In a related proceeding in the Delaware Court of Chancery, captioned *Danenberg v. Fitracks, Inc.*, C.A. No. 6454-VCL, counsel for Aetrex stipulated that the TP Complaint in this action does "not mak[e] any claims based on representations made in advance of September 2008." (D.I. 45 Ex. 1 at 22) However, in that proceeding, counsel for Aetrex observed that pre-September 2008 conduct may still be relevant to this Court's analysis of personal jurisdiction. (*See id.* at 36) The Court received and reviewed the series of letters submitted by the parties relating to the impact of the Court of Chancery proceeding. (*See* D.I. 43, 44, 45, 46, 47, 48; C.A. No. 11-00039, D.I. 30) The Court has considered all conspiracy-related allegations arising from any time frame in making its assessment of personal jurisdiction.

18

impossible for these TP Defendants – who did not know each other or have business dealings with each other – to have engaged in the conspiracy alleged.

### b.    Conspiracy Relating to iStep Machine Placement

The second allegation of conspiracy, involving placing iStep machines in Blue Bird's stores, is a sufficient ground to exercise jurisdiction over Michalovski and Just4Fit Israel. However, this allegation of conspiracy is an insufficient basis to exercise personal jurisdiction over Blue Bird.

### i.    Michalovski and Just4Fit Israel

The TP Complaint adequately pleads that Michalovski, Danenberg, and Just4Fit Israel engaged in a conspiracy to place iStep machines in Blue Bird's stores in an attempt to knowingly circumvent the requirements of the VLA. (*See* D.I. 3 at ¶¶ 145-50)  First, the TP Complaint alleges that Michalovski, Danenberg, and Just4Fit Israel all were members of the conspiracy.[11] Aetrex's briefing details the role that each of these TP Defendants played in the conspiracy. (*See* D.I. 21 at 34-36)  The TP Complaint alleges that a substantial effect in furtherance of the

---

[11] "[A] corporation generally cannot be deemed to have conspired with its officers and agents for purposes of establishing jurisdiction under the conspiracy theory." *See Hartsel*, 2011 WL 2421003, at *10; *see also G&G LLC v. White*, 535 F. Supp. 2d 452, 466 n.25 (D. Del. 2008). However, an exception to this general rule exists "when the officer or agent of the corporation steps out of her role as an officer or agent and acts pursuant to personal motives." *See Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005); *see also Johnston v. Baker*, 445 F.2d 424, 427 (3d Cir. 1971) (determining conspiracy existed where there was "evidence to support the finding that [defendants] were acting for personal reasons"). Courts interpreting the personal motives exception "have read it to mean a personal animus and/or desire for financial benefit other than one's corporate salary." *Amaysing Techs. Corp.*, 2005 WL 578972, at *8 (internal quotation marks omitted). Here, the TP Complaint alleges that Michalovski gained a "personal profit" and "acted . . . for [his] own individual benefit." (D.I. 3 at ¶¶ 184-85)  The Court finds that these allegations are sufficient to demonstrate that the exception to the general rule applies and, therefore, that Michalovski could have engaged in a conspiracy with Just4Fit Israel even though he was an agent of Just4Fit Israel.

conspiracy occurred in Delaware – namely, the impact of the fraud on the VLA, which contains Delaware choice-of-law provisions, and the impact of the fraud on Just4Fit Israel, a subsidiary of a Delaware corporation, on its parent corporation Just4Fit.[12] (*See* D.I. 3 at ¶ 13; Tr. at 51) The TP Complaint enables the Court to draw an inference that Michalovski and Just4Fit Israel knew that their acts of assisting with opening sham Virtual Stores would have an impact in Delaware. (*See* D.I. 3 at ¶ 76)

With respect to Michalovski, the TP Complaint alleges that, as Vice President of Just4Fit, Michalovski would have been aware of the VLA and the impact of Just4Fit Israel's opening of stores on the VLA. Based on Michalovski's role as Vice President of Just4Fit and consultant to Just4Fit Israel, it was foreseeable that fraud involving the opening of Virtual Stores would have an impact on Just4Fit, a Delaware corporation, which created Just4Fit Israel for the express purpose of "operat[ing] virtual stores in Israel." (*See* D.I. 18 at A163)

With respect to Just4Fit Israel, Danenberg's affidavit indicates that Just4Fit Israel "was created to operate virtual stores in Israel." (*See* D.I. 18 at A163) This coupled with the fact that Just4Fit Israel and Just4Fit shared common officers and directors is sufficient for this Court to infer that Just4Fit Israel had knowledge of the VLA and that it was foreseeable that fraud involving the opening of Virtual Stores would have an impact on Just4Fit, a Delaware corporation.

Thus, the Court can exercise personal jurisdiction over Michalovski and Just4Fit Israel

---

[12]The TP Defendants' reliance on the fact that the victim of the alleged conspiracy was Aetrex, a New Jersey corporation, is misplaced. (*See* D.I. 24 at 9; Tr. at 10-11) Although there was a definite impact of the conspiracy within New Jersey, the Court determines that there also was a significant impact within Delaware, and it is this impact that the Court focuses on in its analysis.

under the conspiracy theory.

### ii.     **Blue Bird**

The Court concludes that Aetrex has failed to make out a prima facie case for the exercise of personal jurisdiction over Blue Bird under the conspiracy theory. First, the Court notes that Aetrex does not allege that Blue Bird was aware of the VLA. Further, Aetrex fails to plead that Blue Bird had the requisite "meeting of the minds" with the other TP Defendants necessary to enter into a conspiracy. In its TP Complaint, Aetrex alleges that TP Defendants "conspired" and "agreed between and/or among themselves" (D.I. 3 at ¶142), but these conclusory allegations are not sufficient to meet the pleading requirements. *See Twombly*, 550 U.S. at 556 (dismissing complaint for failure to state claim of conspiracy and noting that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice").

Aetrex requests that the Court dispense with the element of an agreement between Blue Bird and the other TP Defendants, arguing that where there is participation it "should be presumed" that the parties shared a "general conspiratorial objective." (D.I. 21 at 34-35) Although the conspirators may not need to "know all the details of the plan," they must have a meeting of the minds relating to the object to be pursued. *See Hartsel*, 2011 WL 2421003, at *10. Here, Aetrex fails to allege that Blue Bird was aware of the existence of the VLA it allegedly conspired to circumvent. Thus, Aetrex fails to meet the first prong of the conspiracy theory of personal jurisdiction. Therefore, Aetrex has failed to make out a prima facie case that the Court has personal jurisdiction over Blue Bird under the conspiracy theory.

### 3.     **Aetrex's Request for Jurisdictional Discovery**

Aetrex requests that if the Court concludes Aetrex has failed to meet its burden to

establish personal jurisdiction over any of the TP Defendants, in lieu of dismissing the claims against any such defendant, the Court allow Aetrex to take jurisdictional discovery. (D.I. 21 at 17) The Supreme Court has held that "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). The Third Circuit instructs that if "the plaintiff's claim is not clearly frivolous, the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging . . . [its] burden." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009); *see also Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("[G]enerally . . . jurisdictional discovery should be allowed unless the plaintiff's claim is 'clearly frivolous.'"). Jurisdictional discovery may be denied "where the party that bears the burden of establishing jurisdiction fails to establish a threshold prima facie showing of personal jurisdiction. *See S. Seafood Co. v. Holt Cargo Sys., Inc.*, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997) (internal quotation marks omitted). "A prima facie case requires factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state." *Id.* (internal quotation marks omitted).

Although Aetrex has not proven that jurisdiction under the conspiracy theory exists with respect to Blue Bird, Aetrex has made a prima facie case that Blue Bird was involved in a conspiracy. Thus, the Court finds that Aetrex has shown at least a colorable basis for potential exercise of personal jurisdiction over Blue Bird. Therefore, the Court will permit Aetrex to conduct limited jurisdictional discovery to determine whether this Court can exercise personal jurisdiction over Blue Bird. The parties will be required to submit a proposed scheduling order

22

to accomplish such discovery.

## B.     Motion to Strike

The TP Defendants also request that the Court strike the TP Complaint because Aetrex lacked a basis to join the TP Defendants under Federal Rule of Civil Procedure 14(a)(1). (D.I. 17 at 17) Rule 14(a)(1) provides that "[a] defending party may, as third party plaintiff, serve a summons and complaint upon a nonparty who is or may be liable to it for all or part of the claim against it." The TP Defendants assert that the TP Complaint fails to allege that any of them would be liable to Aetrex for its breach of the VLA. (*Id.*)

In response, Aetrex asserts that it has pled facts indicating that the TP Defendants could be liable under a theory of equitable indemnification. (D.I. 21 at 17-18) Specifically, Aetrex asserts that if the Court finds that it breached the contract by failing to accept Just4Fit's representations concerning the opening of Virtual Stores, Aetrex would have done so only because of the TP Defendants' conduct. (*Id.* at 18) Thus, according to Aetrex, it would be entitled to equitable indemnification from the TP Defendants if it was found to have breached the VLA.

Delaware law provides that a nonparty may be liable to a party under a theory of equitable indemnification. *See J.L. v. Murphy*, 719 F. Supp. 2d 353, 359 (D. Del. 2010) (recognizing theory); *Ianire v. Univ. of Del.*, 255 A.2d 687, 692 (Del. Super. Ct. 1969) (holding right to indemnity exists "[w]here the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged"). Here, the TP Complaint fails to allege that TP Defendants should be held liable under a theory of equitable indemnification because the TP Complaint fails to allege that any of the TP Defendants would be liable to Aetrex for its breaches

23

of the VLA if the Court found that Aetrex opened Virtual Stores in breach of the VLA.

Aetrex asks that, in the alternative, the Court treat the TP Complaint as a motion to join the TP Defendants to Aetrex's counterclaim pursuant to Federal Rule of Civil Procedure 20(a) and then grant such motion. Rule 20(a) allows joinder of claims where any question of law or fact common to plaintiffs or defendants will arise in the action. *See Langbord v. U.S. Dep't. of Treasury*, 749 F. Supp. 2d 268, 277 (E.D. Pa. 2010) (treating improper attempt to implead party under Rule 14(a) as Rule 20 motion); *Comtel Techs., Inc. v. Paul H. Schwendener, Inc.*, 2005 WL 433327, at *13 (N.D. Ill. Feb. 22, 2005) (same). "Rule 20 permits joinder even when the party that the movant seeks to add bears no responsibility should the movant be held liable." *Langbord*, 749 F. Supp. 2d at 277. The Supreme Court has instructed that courts should "entertain[] the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966); *see also Hagan v. Rogers,* 570 F.3d 146, 153 (3d Cir. 2009) (citing *Gibbs*); *Gay v. Stevens*, 2011 WL 5276535, at *3 (D.N.J. Nov. 2, 2011) ("The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.").

Considering this inclusive standard, and the fact that the claims against the TP Defendants arise from and relate to the breach of contract claim asserted by Just4Fit against Aetrex and involve common questions of fact and law with Just4Fit's claim, the Court will construe Aetrex's request as a Rule 20(a) motion and grant it. Therefore, the Court will also join the TP Defendants (other than Blue Bird).

## C. Motion to Dismiss[13]

### 1. Fraud Claim

Count Six of Aetrex's TP Complaint alleges that the TP Defendants engaged in fraud.

*(See* D.I. 3 at ¶¶ 132-140) Under Delaware law, the elements of a claim for fraud are:

> (1) a false representation, usually of fact, made by the defendant;
> (2) the defendant's knowledge or belief that the representation was
> false, or the defendant's reckless indifference to the truth; (3) an
> intent to induce the plaintiff to act or refrain from acting; (4) the
> plaintiff's action or inaction taken in justifiable reliance upon the
> representation; and (5) damage to the plaintiff as a result of such
> reliance.

*Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992). The circumstances constituting fraud must be pled with particularity. *See* Fed. R. Civ. P. 9(b); Del. Super. Ct. R. 9(b). Malice, intent, knowledge and other conditions of mind of a person may be alleged generally. *See id.*

The TP Complaint states a claim for fraud against Danenberg. Aetrex has adequately alleged that Danenberg falsely represented and omitted facts concerning his idea to "develop a 'Virtual Store' concept." (D.I. 3 at ¶ 29) Aetrex specifically alleges that "Danenberg represented to Aetrex that the 'Virtual Store' would be [an] eye-catching, elaborate, unique and innovative retail concept that was distinct from Aetrex's existing business" (*id.* at ¶ 31), and further that Danenberg stated that the Virtual Stores would "provid[e] the best of on-line convenience with a bricks and mortar presence" (*id.* Ex. B). These statements can be construed as statements of fact, which are alleged to have been false. The purported Virtual Stores ultimately established were not "bricks and mortar;" instead, they were nothing more than machines placed inside other

---

[13]The Court will not address the adequacy of claims asserted against Blue Bird in light of the Court's holding that it cannot exercise personal jurisdiction over Blue Bird at this time.

25

stores. (*Id.* at ¶¶ 65, 69, 73) The purported Virtual Stores were not connected to the internet and, thus, could not provide the "best of on-line convenience." (D.I. 21 at 22) Aetrex further alleges that Danenberg knew or believed that the representations he made regarding the Virtual Stores were false or made with a reckless indifference to the truth. (*See* D.I. 3 at ¶ 62 (alleging that "all relevant times, Danenberg knew Just4Fit would not meet the July 1, 2010 deadline, thereby making knowingly false statements and misrepresentations to Aetrex"); *id.* at ¶ 95 ("Danenberg knew these representations were false when made.")) Further, the TP Complaint alleges that Danenberg intended for Aetrex to rely on, and that Aetrex did in fact rely on, his representations of what a Virtual Store would look like. (*See id.* at ¶ 41 ("In reliance on Danenberg's representations regarding . . . appearance of Virtual Stores . . . .")) The TP Complaint also alleges that Aetrex was injured by its reliance because the Virtual Stores delivered were not the Virtual Stores for which Aetrex contracted. (*See id.* at ¶¶ 61-66) Thus, the Court concludes that Aetrex has adequately pled a claim for fraud against Danenberg.

Additionally, the TP Complaint states a claim for fraud against TP Defendants Michalovski and Just4Fit Israel. The crux of the fraud claim against these TP Defendants appears in ¶ 133:

> [E]ach Third Party Defendant has engaged in a scheme of deceit by knowingly misrepresenting and/or fraudulently concealing material facts, including but not limited to: (i) their financial condition; (ii) their inability to open and operate Virtual Stores; (iii) their intent to misappropriate and co-mingle post merger consideration and earn out monies collected from Aetrex to fund this frivolous lawsuit against Aetrex in an attempt to maintain an exclusive worldwide license for Virtual Stores that is entirely unearned and unwarranted; (iv) their failure to open 25 Virtual Stores by July 1, 2011; and (v) their attempt to preclude Aetrex from engaging in its longstanding Devices business around the world by falsely

asserting that the VLA prohibits Aetrex from engaging in such a business.

(*Id.* at ¶ 133) The TP Complaint supports an inference that Michalovski and Just4Fit Israel had knowledge of the terms of the VLA and the meaning of a Virtual Store. For Michalovski, this inference arises from his role as officer of Just4Fit and consultant to Just4Fit Israel. (*Id.* at ¶ 5) Additionally, Michalovski's own email makes explicit reference to the VLA, which demonstrates his knowledge of it. (*See id.* Ex. 7 (Michalovski stating that "[f]urther to the Virtual Store licensing agreement between Aetrex worldwide Inc. and JUST4FIT Inc., we intend to issue a purchase order soon")) The TP Complaint adequately demonstrates that Danenberg had knowledge of the VLA and its explicit terms in its allegations regarding specific misrepresentations he made relating to the opening of Virtual Stores. (*See id.* at ¶¶ 29-33) There is an inference that Just4Fit Israel was aware of the VLA and its terms because of the fact Just4Fit Israel was the subsidiary of Just4Fit and was created for the express purpose of operating Virtual Stores in Israel. (D.I. 18 at A163 ¶¶ 5, 7) Further, the TP Complaint adequately alleges that Michalovski and Just4Fit Israel had knowledge that their representations regarding the opening of Virtual Stores were false. (*See* D.I. 3 at ¶ 133 (stating that each TP Defendant "engaged in a scheme of deceit by knowingly misrepresenting and/or fraudulently concealing material facts")) The TP Complaint adequately alleges that these statements were made with the intent of "induc[ing] Aetrex to continue investing in and promoting the Virtual Store concept" (*id.* at ¶ 134) and "for the purpose of inducing Aetrex to act or forebear from acting" (*id.* at ¶ 138). Finally, the TP Complaint adequately alleges that Aetrex acted in justified reliance on these misrepresentations and suffered damages. (*See id.* at ¶¶ 139-40 (stating things Aetrex

27

would have done differently had it been aware of actual facts and claiming that "Aetrex has been damaged by the fraud"))

## 2. **Civil Conspiracy**

Count Seven of Aetrex's TP Complaint alleges that the TP Defendants engaged in a civil conspiracy. (D.I. 3 at ¶¶ 141-151) Under Delaware law, the elements of civil conspiracy are: "(1) [a] confederation or combination of two or more persons; (2) [a]n unlawful act done in furtherance of the conspiracy; and (3) [a]ctual damage." *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149-50 (Del. 1987). Aetrex's conspiracy claim relies on its allegations that the TP Defendants misrepresented that Virtual Stores had been opened. (*See* D.I. 3 at ¶¶ 144-45) The Court concludes that all of the required elements of a civil conspiracy are adequately alleged here.

Specifically, the TP Complaint alleges that the TP Defendants were all working together to defraud Aetrex into believing that twenty-five Virtual Stores were opened. (*See id.* at ¶ 145) The TP Complaint contains allegations of an unlawful act done in furtherance of the conspiracy. (*See id.* at ¶ 148 (alleging that TP Defendants unlawfully raised money by deceiving and tricking investors)) Finally, the TP Complaint alleges that Aetrex suffered actual damages in the form of loss of tangible sums of money, lost profits, and damage to its good name, reputation and goodwill. (*See id.* at ¶ 150) The TP Defendants' argument that this is a simple breach of contract case is unconvincing. Instead, the TP Complaint alleges a scheme of fraud that does not depend solely on a determination of whether the VLA was breached. Accordingly, the TP Defendants' Motion to Dismiss the civil conspiracy claim will be denied.

## 3. **Unjust Enrichment**

Count Nine of Aetrex's TP Complaint alleges unjust enrichment. (D.I. 3 at ¶¶ 167-69)

"The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Trevino v. Merscorp., Inc.*, 583 F. Supp. 2d 521, 533-34 (D. Del. 2008). The TP Defendants argue that Aetrex cannot maintain a claim for unjust enrichment because Aetrex also alleges a claim for breach of contract. (D.I. 17 at 37) However, under Federal Rule of Civil Procedure 8(e), a plaintiff is permitted to plead counts in the alternative. *See Callaway Golf Co. v. Dunlop Slazenger Grp. Americas, Inc.*, 295 F. Supp. 2d 430, 438 (D. Del. 2003).

Although Aetrex alleges the existence of an express contract, it appears to the Court that there is at least some dispute concerning this contract, particularly with regard to the meaning of certain terms. In light of this disagreement and given the early stage of the proceedings, the Court will allow Aetrex to proceed on its claim of unjust enrichment as an alternative theory to its breach of contract claim. *See Trevino*, 583 F. Supp. 2d at 534 (denying motion to dismiss because plaintiff could plead unjust enrichment claim as alternative to breach of contract). Additionally, there is no contract between Aetrex and the TP Defendants; the Merger Agreement and VLA are between Aetrex, on the one hand, and Fitracks and Just4Fit, on the other hand. Finally, the Court rejects the TP Defendants' contention that Aetrex fails to plead an enrichment to them. (Tr. at 22) The TP Complaint alleges that the TP Defendants were enriched in that they obtained "benefits," which will be proven at trial. (D.I. 3 at ¶¶ 168-69) Specifically, based on the TP Complaint's allegation that the corporate veil of Just4Fit should be pierced, TP Defendants Michalovski and Danenberg obtained any personal benefit that Just4Fit Israel and Just4Fit received. (*See* Tr. at 22; D.I. 3 at ¶¶ 179-82) Accordingly, the Court will deny the TP

Defendants' Motion to Dismiss the unjust enrichment claim.

### 4.    **Injunctive Relief**

Count Ten of the TP Complaint seeks relief in the form of an injunction compelling

Just4Fit to remove the iStep machines from Blue Bird's stores, return them to Aetrex, and cease

selling or using the products and trademarks claimed by Aetrex. (D.I. 3 at ¶ 174) A party

seeking a mandatory injunction must ultimately demonstrate: "(1) the reasonable probability of

eventual success in the litigation and (2) that the movant will be irreparably injured pendent lite

damages if the relief is not granted." *Bennington Foods LLC v. St. Croix Renaissance, Grp.,*

*LLP*, 528 F.3d 176, 179 (3d Cir. 2008).

The TP Defendants assert that Aetrex has failed to allege irreparable harm. (D.I. 17 at

38) This is incorrect. In the TP Complaint, Aetrex alleges that the TP "Defendants have placed

iStep machines in the alleged Virtual Stores in such a deplorable and disparaging manner as to be

damaging to Aetrex's good name, goodwill, and reputation." (D.I. 3 at ¶ 172) Damage to a

company's good will and reputation can constitute irreparable harm. *See Byrne v. Calastro*, 205

Fed. Appx. 10, 16 (3d Cir. Nov. 7, 2006) (holding irreparable harm to image and reputation

sufficient for granting preliminary injunction); *see also Opticians Assoc. of Am. v. Indep.*

*Opticians of Am.*, 920 F.2d 187, 196 (3d Cir. 1990) ("Potential damage to reputation constitutes

irreparable injury for the purposes of granting a preliminary injunction in a trademark case.").

Thus, Aetrex has adequately pled a claim for injunctive relief, and the Court will deny the

TP Defendants' Motion to Dismiss the injunctive relief claim.

### 5.    **Piercing the Corporate Veil**

Finally, Count Eleven of the TP Complaint requests that the Court pierce the corporate

veil to hold TP Defendants Danenberg and Michalovski personally liable for the alleged wrongdoing of Just4Fit and Just4Fit Israel. (D.I. 3 at ¶¶ 176-85) In order to prevail on a claim for piercing the corporate veil, plaintiffs "must show (1) that the corporation and its shareholders operated as a single economic entity, and (2) that an overall element of injustice or unfairness is present." *Trevino*, 583 F. Supp. 2d at 528. In the Third Circuit, a court must consider seven factors to determine whether a corporation and its shareholders "operated as a single economic entity." *See Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 470-71 (D. Del. 2010) (listing factors: "(1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporations at the time; (5) siphoning of the corporation's funds by the dominant stockholder; (6) absence of corporate records; (7) whether the corporation is merely a facade").

Aetrex asserts that it has adequately alleged at least three of the factors with respect to both Just4Fit Israel and Just4Fit: failure to observe corporate formalities, absence of corporate records, and that the corporation is a facade. (D.I. 21 at 38) The TP Defendants do not dispute that Aetrex has alleged facts to support these three factors. (D.I. 17 at 39) Rather, the TP Defendants assert that Aetrex has failed to adequately allege fraud, injustice, or unfairness. (*Id.*)

The Court concludes that Aetrex has adequately alleged injustice and unfairness. Specifically, Aetrex has demonstrated that Just4Fit Israel was created for the sole purpose of opening Virtual Stores in Israel. (*See* D.I. 18 at A163 ¶¶ 5, 7) Aetrex asserts that, in fact, no Virtual Stores were opened and that the creation of Just4Fit Israel was all part of a sham. (*See* D.I. 3 at ¶ 47) The TP Complaint alleges that both Danenberg and Michalovski engaged in this fraudulent scheme involving the incorporation of Just4Fit Israel "to attempt to shield themselves

31

from personal liability." (*Id.* at ¶ 178) If these allegations are proven, then allowing Danenberg or Michalovski to escape liability by hiding behind the corporate veil would be unfair and unjust. Thus, Count Eleven of the TP Complaint states a claim for piercing the corporate veil. Accordingly, the Court will deny TP Defendants' Motion to Dismiss Count Eleven of the TP Complaint.

### D.    **Motion to Consolidate**

Aetrex requests that the Court consolidate *Aetrex I* with *Aetrex II*. (D.I. 22) In support of this request, Aetrex asserts that the *Aetrex I* and *Aetrex II* litigations de facto involve the same plaintiffs and similar claims. (D.I. 23 at 3) Aetrex asserts that the plaintiffs in both actions, MIG and Just4Fit, are "for all intents and purposes" the same plaintiff. (*Id.*) Just4Fit was created on behalf of Fitracks, as an entity that would be granted a license from Aetrex pursuant to the Merger Agreement. (*Id.*) Similarly, MIG was designated to represent the stockholders of Fitracks with respect to all matters relating to the Merger Agreement. (D.I. 23 Ex. 2 at ¶¶ 12-13) Thus, according to Aetrex, both actions will involve many of the same key witnesses and documents. (D.I. 23 at 4) Additionally, because the cases will each require the Court to interpret the Merger Agreement, the cases involve common questions of law and fact. (*Id.*)

In response, Just4Fit and MIG point out that each of the cases are based on separate contracts and that neither plaintiff is a party to the contract on which the other plaintiff's case is based. (D.I. 26 at 2) Thus, according to Just4Fit and MIG, neither the parties nor legal issues presented are the same. (*Id.*) The parties are not the same because Just4Fit and MIG have different groups of equity stockholders. (D.I. 3 at ¶ 84) The legal issues differ in that in *Aetrex I* the issue is the proper interpretation of the VLA while in *Aetrex II* the issue is the interpretation

of § 6.01 of the Merger Agreement. (D.I. 26 at 4) Although Just4Fit concedes that both provisions-at-issue were contemplated in the Merger Agreement, it asserts that there is no overlap between the provisions, as they provide different consideration to different parties for unrelated post merger matters. (*Id.*)

MIG argues that *Aetrex II* will involve evidence found within the United States and the witnesses would be Aetrex's personnel, whereas *Aetrex I* relates to events that occurred in Israel and will involve witnesses who are in Israel. (C.A. No. 11-00035, D.I. 10 at 5) Therefore, according to MIG, the only person who will likely be a witness in both cases is Aetrex's CEO, who lives in New Jersey and would hardly be inconvenienced by having to appear twice. (*Id.*)

Moreover, Just4Fit and MIG argue that consolidation will not advance efficiency and will increase costs. Specifically, Just4Fit and MIG argue that because *Aetrex I* is a case in which Aetrex is claiming that Just4Fit has wronged MIG, there may be a need for separate counsel, which creates additional costs and is inefficient. (D.I. 26 at 3) Further, Just4Fit and MIG posit that attorney's fees may be contractually available in *Aetrex I*, but are not contractually available in *Aetrex II*. (*Id.* at 4-5) Just4Fit further contends that Danenberg is entitled to indemnity and advancement of fees and expenses from Fitracks for defense of claims based on actions he took in his position as an officer and director of Fitracks. (*Id.* at 5) Thus, according to Just4Fit, consolidating the cases would just add to the accounting complexities that already exist in *Aetrex I.* (*Id.*)

The Court concludes that these cases can and should be consolidated. They involve multiple common questions of fact and law, including the relationships among the parties and the negotiation and meaning of the Merger Agreement. In a real sense, Aetrex's defense against the

alleged breaches of the Merger Agreement – the breach of § 6.03 alleged in *Aetrex I* and the breach of § 6.01 alleged in *Aetrex II* – is the same: Aetrex was defrauded by the TP Defendants. Thus, there will be overlap in deposition discovery – including that of Danenberg and others involved in the relationship between Aetrex and Fitracks and the negotiation of the Merger Agreement and VLA – as well as documentary evidence and other discovery.[14] It will save the parties and the Court time and resources to consider the bundle of disputes among these parties in a single consolidated action. Further, the Court does not believe that a consolidated trial will prove to be too complex for a jury to understand.

The Court has considered counsel's concern that consolidation may render certain fee arrangements difficult to implement. (*See* Tr. at 24-26) The Court has also considered that, depending on the outcome on the merits of the consolidated case, the parties and the Court may confront complexities in determining the precise amount of attorney's fees to be awarded. Neither of these factors have weighed heavily in the Court's ruling. Consolidation can be appropriate where there is some reason to believe it may somewhat simplify cases; it is not a prerequisite that the resulting consolidated case actually be simple.

Finally, the Court also does not accord significant weight to the fear expressed by TP Defendants' attorneys that consolidation will provide a basis for counsel's disqualification. Although the parties did not brief the issue, it appears that counsel's concern would be governed by Model Rule of Professional Conduct 1.7, dealing with conflicts of interest among current

---

[14]To the extent the discovery necessary in *Aetrex II* is substantially less extensive than that required in *Aetrex I*, the parties may wish to propose a schedule that provides for early case-dispositive motions on the *Aetrex II* issues. Alternatively, either party may seek leave to file an early case-dispositive motion.

clients. *See* Model Rules of Prof'l Conduct R. 1.7; *see also* Del. LR 83.d (adopting Model Rules of Professional Conduct). Counsel has not explained how the conflicts analysis under this (or any other) Rule would differ depending on whether consolidation is granted.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the TP Defendants' Motion to Dismiss, deny the TP Defendants' Motion to Strike, and grant Aetrex's Motion to Consolidate. An appropriate Order follows.